IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: TEXTAINER PARTNERSHIP SECURITIES LITIGATION _____ THIS DOCUMENT RELATES TO: Labow action only (formerly C-05-2328) _____/ | No. C 05-0969 MMC **ORDER GRANTING MOTION TO REMAND LABOW ACTION; VACATING JUNE 17, 2005 CONSOLIDATION ORDER; VACATING HEARING** (Docket No. 96) |

Before the Court is plaintiff Leonard Labow's motion, filed June 21, 2005, to remand Labow v. Textainer Financial Services Corp. ("Labow action"), formerly Case No. C-05-2328,[1] to the California Superior Court for the City and County of San Francisco. Defendants have filed opposition to the motion, to which plaintiff has filed a reply. Having considered the papers submitted in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the July 29, 2005 hearing. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The Labow action is a purported class action brought on behalf of holders of limited partnership units issued by TCC Equipment Income Fund, Textainer Equipment Income Fund II, Textainer Equipment Income Fund III, Textainer Equipment Income Fund IV, Textainer

---

[1] As noted below, the Labow action was consolidated with Case No. C 05-0969 on June 17, 2005.

1  Equipment Income Fund V, and Textainer Equipment Income Fund VI
2  (collectively, "Textainer partnerships"). (See First Amended Complaint ("FAC") ¶ 1.) Plaintiff
3  alleges he is a holder of limited partnership units issued by Textainer Equipment Income Fund
4  III. (See id. ¶ 8.) The defendants to the action are Textainer Financial Services Corporation,
5  Textainer Equipment Management Limited, Textainer Capital Corporation, Textainer Group
6  Holdings Limited, and John A. Maccarone, all of whom are alleged to be general partners of
7  the Textainer partnerships. (See id. ¶¶ 9-14.) In addition, the Textainer partnerships
8  themselves are named as nominal defendants. (See id. ¶ 16.)

9       Plaintiff challenges a proposed sale of the Textainer partnerships' assets as
10 negotiated by the general partners. (See id. ¶ 4.) Plaintiff alleges the sale is "fundamentally
11 unfair" to the limited partners "because it is the product of a flawed bidding process that
12 effectively eliminates the entities that comprise over 85% of the market for leasing steel cargo
13 containers by conditioning any bid on the Partnerships' assets on a management contract with
14 defendant Textainer Equipment Management Limited, one of the general partners of the
15 Partnerships." (See id.) Plaintiff further alleges the sale is "fundamentally unfair . . . because
16 the assets are undervalued by a significant amount as the terms on which they are to be sold
17 do not reflect current market conditions." (See id.) Additionally, plaintiff alleges "the
18 defendants, in order to effectuate the Sale, have issued a series of materially misleading
19 proxy statements which they are using to solicit the proxies of limited partners, as a majority of
20 them must approve the Sale." (See id. ¶ 5.) Plaintiff asserts a single cause of action against
21 defendants, under California law, for breach of fiduciary duty. (See id. ¶¶ 97-202.)

22      The Labow action was removed to federal court on June 8, 2005. On June 17, 2005,
23 the Court related the Labow action to Lewis v. Textainer Equipment Income Fund II, C-05-
24 0959 ("Lewis action"), and Gordon v. Textainer Financial Services, C-05-1146 ("Gordon
25 action"), and consolidated the three actions. The Lewis and Gordon actions assert federal
26 proxy solicitation claims as well as state law claims for breach of fiduciary duty; all three
27 actions are based on the same underlying transaction.

28      Plaintiff filed the instant motion to remand on June 21, 2005.

**LEGAL STANDARD**

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. See 28 U.S.C. § 1447(c).

Here, as discussed infra, defendants removed the Labow action primarily in reliance on the Class Action Fairness Act of 2005 ("CAFA"). As relevant to the instant action, CAFA generally grants the district courts original jurisdiction over any class action in which (1) the aggregate amount in controversy exceeds $5,000,000; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant;[2] (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief; and (4) the number of members of the plaintiff class is 100 or more. See 28 U.S.C. §§ 1332(d)(2), (d)(5).

The district court lacks original jurisdiction over such action, however, if the action:

solely involves a claim –

(A) concerning a covered security as defined under [section] 16(f)(3) of the Securities Act of 1933 (15 U.S.C. § 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. § 78bb(f)(5)(E));

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the regulations issued thereunder).

See 28 U.S.C. § 1332(d)(9); see also 28 U.S.C. § 1453(d) (setting forth same exceptions.)

In addition, the district court "shall decline to exercise jurisdiction" under § 1332(d)(2) over (1) a class action in which (a) more than two-thirds of the class members are citizens of the state in which the action was originally filed; (b) plaintiffs seek significant relief against at

---

[2] For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." See 28 U.S.C. § 1332(d)(10).

least one defendant whose conduct forms a significant basis for the claims asserted by the class and who is a citizen of the state in which the action was originally filed; (c) the principal injuries were incurred in the state in which the action was originally filed; and (d) during the three-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons.  See 28 U.S.C. § 1332(d)(4)(A).  The district also must decline to assert jurisdiction under § 1332(d)(2) over a class action in which two-thirds or more of the class members, and the primary defendants, are citizens of the state in which the action was originally filed.  See 28 U.S.C. § 1332(d)(4)(B).

Further, the district court may decline to exercise jurisdiction under § 1332(d)(2) over a class action in which greater than one-third but less than two-thirds of the members of the plaintiff class and the primary defendants are citizens of the state in which the action was originally filed, based on consideration of six factors.[3]  See 28 U.S.C. § 1332(d)(3).

Finally, any class action over which the district court has jurisdiction under § 1332(d) is removable by any defendant without the consent of the remaining defendants and without regard to whether any defendant is a citizen of the state in which the action is brought.  See 28 U.S.C. § 1453(b).

While courts ordinarily are required to "strictly construe [a] removal statute against removal jurisdiction," rejecting jurisdiction "if there is any doubt as to the right of removal in the first instance," see Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992), the legislative

---

[3] The six factors are: "(A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." See 28 U.S.C. § 1332(d)(3).  None of these factors is relevant herein.

4

history of CAFA instructs that CAFA's jurisdictional provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if removed by any defendant." See 151 Cong. Rec. H723-01, H-727 (2005) (statement of Congressman Sensenbrenner). "[I]f a Federal court is uncertain . . . the court should err in favor of exercising jurisdiction over the case." Id.

Similarly, while the defendant ordinarily bears the burden of proving that removal was proper, see Gaus, 980 F.2d at 566, CAFA's legislative history indicates that the plaintiff has the burden of proving that an action removed under CAFA should be remanded. See S. Rep. 109-14 at 45 (2005) ("If a purported class action is removed pursuant to these jurisdictional provisions . . . it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court").

**DISCUSSION**

Plaintiff argues, relying on 28 U.S.C. §§ 1332(d)(9) and 1453(d), that the Labow action should be remanded because CAFA specifically excludes state law fiduciary duty claims from its application. In response, defendants contend the Labow action was properly removed under CAFA. Defendants also contend removal was proper on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, and supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

**A. Class Action Fairness Act**

It is undisputed that the Labow action satisfies CAFA's threshold jurisdictional prerequisites, as set forth in 28 U.S.C. §§ 1332(d)(2) and 1332(d)(5). Plaintiff "does not dispute the amount in controversy, nor the fact that class members reside throughout the United States." (See Motion at 5-6.) As defendants observe, the Lewis and Gordon actions, which are based on the same facts as the Labow action, seek more than $20 million in damages. (See Notice of Removal ¶ 6 and Ex. D (Forsman Decl.) ¶¶ 5-6). Additionally, defendants have submitted undisputed evidence that plaintiff is a citizen of New Jersey, that no defendant is a citizen of that state, and that fewer than one-third of the class members are citizens of California. (See Notice of Removal ¶¶ 4-5 and Ex. D (Forsman Decl.) ¶¶ 2-4.)

5

1 Thus, the minimal diversity requirements of § 1332(d)(2)(A) have been met, and none of the
2 various thresholds for declining jurisdiction have been satisfied.  See 28 U.S.C. §§
3 1332(d)(2)(A), (d)(3), and (d)(4).  Further, as none of the defendants is a state entity, and
4 defendants have submitted undisputed evidence that there are more than 100 members of the
5 plaintiff class, (see Notice of Removal Ex. D (Forsman Decl.) ¶ 4), the requirements of
6 28 U.S.C. § 1332(d)(5) have been met.

7       As noted, plaintiff argues that the Labow action nonetheless must be remanded
8 because it falls within CAFA's exceptions as set forth, in essentially identical language, at 28
9 U.S.C. §§ 1332(d)(9)(B) and (C) and 28 U.S.C. §§ 1453(d)(2) and (d)(3).[4]

10       To date, no reported decision has discussed the applicability of the exceptions to
11 CAFA.  CAFA's legislative history indicates that the changes to the jurisdiction of the federal
12 courts set forth in CAFA were intended to "correct[ ] a flaw in the current diversity jurisdiction
13 statute (28 U.S.C. § 1332) that prevent[ed] most interstate class actions from being
14 adjudicated in federal courts."  See S. Rep. 109-14 at 5.  Because "interstate class actions
15 typically involve more people, more money and more interstate commerce ramifications than
16 any other type of lawsuit," CAFA was intended to ensure that such actions could "be heard by
17 federal courts if any of the defendants so desire[d]."  See id.  In addition, CAFA "makes it
18 harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, [and]
19 creates efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be
20 consolidated in a single federal court[.]"  See id.  CAFA addresses these concerns by
21 "allowing a larger number of class actions into federal courts, while continuing to preserve
22 primary state court jurisdiction over primarily local matters."  See id. at 6.

23       Nevertheless, the exceptions to CAFA exempt "from new subsection 1332(d)(2)'s
24 grant of original jurisdiction those class actions that solely involve claims that relate to matters
25 of corporate governance arising out of state law."  See id. at 45.  The purpose of the
26 exceptions "is to avoid disturbing in any way the federal vs. state court jurisdictional lines

---

[4] According to CAFA's legislative history, "the parameters" of 28 U.S.C. § 1332(d)(9) and 28 U.S.C. § 1453(d) "are intended to be coterminous."  See S. Rep. 109-14 at 50.

6

already drawn in the securities litigation class action context by the enactment of the Securities Litigation Uniform Standards Act of 1988" ("SLUSA").[5] See id. The exceptions are intended to be "narrowly construed" to include "only litigation based solely on (a) state statutory law regulating the organization and governance of business enterprises such as corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, and business trusts; (b) state common law regarding the duties owed between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises." See id. As noted above, plaintiff bears the burden of demonstrating that the exceptions apply. See id.

### 1. Internal Affairs

Pursuant to the first of the two exceptions on which plaintiff relies, the Court lacks jurisdiction over the Labow action if it "solely involves a claim . . . that relates to the internal affairs or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." See 28 U.S.C. §§ 1332(d)(9)(B), 1453(d)(2). According to CAFA's legislative history, "the phrase 'the internal affairs or governance of a corporation or other form of business enterprise' is intended to refer to the internal affairs doctrine defined by the U.S. Supreme Court as 'matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders.'" See S. Rep. 109-14 at 45 (citing Edgar v. MITE Corp., 457 U.S. 624, 645 (1982)). The phrase "other form of business enterprise" is "intended to include forms of business entities other than corporations, including,

---

[5] "SLUSA generally provides for the removal and dismissal of class actions brought pursuant to state law alleging misrepresentations in connection with the purchase or sale of a covered security." See Patenaude v. Equitable Life Assurance Society of the United States, 290 F.3d 1020, 1023-24 (9th Cir. 2002); see also 15 U.S.C. § 77p(b); 15 U.S.C. § 78bb(f). An exception to SLUSA permits such a class action to be maintained if it is "based upon the statutory or common law of the State in which the issuer . . . is organized." See 15 U.S.C. § 77p(d)(1); 15 U.S.C. § 78bb(f)(3). "The statute was originally enacted in 1998 because heightened pleading requirements in federal securities cases caused a pilgrimage of securities claims to state courts, thus circumventing congressional reforms designed to restrict federal securities claims." See Falkowski v. Imation Corp., 309 F.3d 1123, 1128 (9th Cir. 2002). Defendants concede that the instant action is not removable pursuant to SLUSA. (See Opp. at 12.)

but not limited to, limited liability companies, business trusts, partnerships and limited partnerships." See id.

"The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officials, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." Edgar, 457 U.S. at 645. In addition to Edgar, CAFA's legislative history includes citations to several cases intended to further illustrate the meaning of "internal affairs." See S. Rep. 109-14 at 45 n.129. In McDermott, Inc. v. Lewis, 531 A.2d 206 (Del. 1987), for example, the Delaware Supreme Court defined "internal affairs" as

> those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. It is essential to distinguish between acts which can be performed by both corporations and individuals, and those activities which are peculiar to the corporate entity. Corporations and individuals alike enter into contracts, commit torts, and deal in personal or real property . . . The internal affairs doctrine has no applicability in these situations. Rather, this doctrine governs the choice of law determinations involving . . . those activities concerning the relationships inter se of the corporation, its directors, officers, and shareholders.

See id. at 214-215. In Ellis v. Mutual Life Ins. Co., 187 So. 434 (Ala. 1939), the Alabama Supreme Court made a similar distinction:

> [W]here the act complained of affects the complainant solely in his capacity as a member of the corporation . . . and is the act of the corporation . . . then such action is the management of the internal affairs of the corporation . . . .

See id. at 443.

Additionally, the Restatement (Second) of Conflict of Laws provides that, under the internal affairs doctrine, "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders . . . ." See Restatement (Second) of Conflict of Laws § 309 (1971); see also Atherton v. FDIC, 519 U.S. 213, 224 (1997) (citing Restatement). "Liability will typically be imposed upon directors under [the internal affairs doctrine] . . . for such matters as the fraudulent or negligent mismanagement of the corporation's affairs . . . and unlawfully profiting at the corporation's expense." See Restatement (Second) of Conflict of Laws § 309,

comment (a).

In light of this authority, the Court finds plaintiff's breach of fiduciary duty claim relates exclusively to the "internal affairs or governance" of the Textainer partnerships and "arises under or by virtue of the laws of the State in which such . . . business enterprise is . . . organized." See 28 U.S.C. §§ 1332(d)(9)(B), 1453(d)(2).  As noted above, plaintiff alleges defendants, in their role as general partners of the Textainer partnerships, (1) rendered the sale of the assets of the partnerships "fundamentally unfair" to the limited partners by demanding that all potential bidders agree to enter into a management contract with one of the defendants, (2) rendered the sale "fundamentally unfair" to the limited partners by undervaluing Textainer's assets, and (3) gained support for the sale by distributing materially misleading proxy statements to the limited partners.  Each of these alleged acts affects plaintiff and the other limited partners solely in their capacity as limited partners of the Textainer partnerships.  Indeed, plaintiff essentially claims that defendants "fraudulent[ly] or negligent[ly] mismanage[d]" the partnership's affairs, and "unlawfully profit[ed] at the [partnership's] expense."  See Restatement (Second) of Conflict of Laws § 309, comment (a).  Moreover, the fiduciary duties allegedly breached arise solely because of the parties' relationship as partners of the Textainer partnerships.  See California Corp. Code § 16404 (defining fiduciary duties owed among partners in partnership).[6]  Finally, courts have consistently applied the internal affairs doctrine to claims for breach of fiduciary duty.  See, e.g., Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 179 n.10 (3d Cir. 2005); Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005); Hollis v. Hill, 232 F.3d 460, 465-66 (5th Cir. 2000); Nagy v. Riblet Products Corp., 79 F.3d 572, 576 (7th Cir. 1996); Hausman v. Buckley, 299 F.2d 696, 703 (2d Cir. 1962) (noting "the internal affairs rule has been applied repeatedly in order to determine the fiduciary duty of a foreign corporation's directors").

Thus, the Court finds that plaintiff's claim for breach of fiduciary duty pertains solely to the "relationships inter se" of Textainer's general and limited partners.  See McDermott, 531

---

[6] It is undisputed that the Textainer partnerships are organized under California law. (See FAC ¶ 16; see also Notice of Removal ¶ 5.)

1  A.2d at 215.  Accordingly, the Court concludes that plaintiff's breach of fiduciary duty claim
2  relates solely to the "internal affairs or governance" of the Textainer partnership and,
3  consequently, the Court lacks jurisdiction over the instant action under CAFA.

### 2. Fiduciary Duty

Although, as discussed above, the Court has found it lacks jurisdiction under CAFA, the Court will consider plaintiff's additional argument that the Court must reject jurisdiction under CAFA because the action "solely involves . . . a claim relating to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" as defined by the Securities Act of 1933 ("Securities Act").  See 28 U.S.C. §§ 1332(d)(9)(C), 1453(d)(3).  Plaintiff is correct that this language expressly includes a claim for breach of fiduciary duty.  The issue, however, is whether the fiduciary duty alleged to have been breached in the Labow action is one "relating to or created by or pursuant to" a "security."

The Securities Act defines "security" to include an "investment contract."  See 15 U.S.C. § 77b(a)(1).  Although limited partnerships ordinarily qualify as "investment contracts" within the meaning of the Securities Act, see Mason v. Unkeless, 618 F.2d 597, 599 n.3 (9th Cir. 1980), whether any particular interest is an investment contract is determined on a case-by-case basis by applying a three-part test.  See Securities and Exchange Comm'n v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946).  Under Howey, an interest is an "investment contract," and thus a "security," if it involves (1) an investment of money, (2) in a common enterprise, and (3) an expectation of profits solely from the efforts of others.  See id.; see also Hector v. Wiens, 533 F.2d 429, 433 (9th Cir. 1976) (discussing three requirements of "Howey test").

The first requirement is satisfied in the instant action because it is undisputed that Textainer's limited partners invested money in the partnership.  (See Compl. ¶ 22.)  The "common enterprise" requirement likewise is satisfied.  The Ninth Circuit has defined a common enterprise as "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties."

10

1  See SEC v. Turner Enterprises, 474 F.2d 476, 482 n.7 (9th Cir. 1973).  "The commonality
2  required is vertical (between the investor and the promoter) rather than horizontal (among
3  multiple investors)."  See Hector, 533 F.2d at 433.  Finally, the third requirement is satisfied,
4  as Textainer's limited partners have "an expectation of profits solely from the efforts of a third
5  party."  In that regard, the Ninth Circuit "has rejected a literal application of 'solely' because it
6  would frustrate the remedial purposes of the Securities Acts."  See Hector, 533 F.2d at 433.
7  Instead, the test is "whether the efforts made by those other than the investor are the
8  undeniably significant ones, those essential managerial efforts which affect the failure or
9  success of the enterprise."  See Turner, 474 F.2d at 482.  Here, the allegations of the
10 complaint demonstrate that the efforts of Textainer's general partners were essential to
11 Textainer's failure or success, as plaintiffs allege that the general partners were responsible
12 for the "operational and financial aspects concerning the Textainer Partnerships."  (See
13 Compl. ¶ 25.)  Consequently, the Textainer partnerships qualify as "investment contracts," and
14 thus are "securities," within the meaning of the Securities Act.

15      Because the sole claim in the Labow action concerns, exclusively, "fiduciary
16 duties relating to or created by or pursuant to" the limited partnership interests in the Textainer
17 partnerships, and those interests are securities, the Court finds the instant action falls within
18 this additional CAFA exception.  See 28 U.S.C. §§ 1332(d)(9)(C), 1453(d)(3).

19      Accordingly, for this additional reason, the Court lacks jurisdiction under CAFA.

20      **B.  Federal Question Jurisdiction**

21      Although the bulk of defendants' Notice of Removal addresses the propriety of removal
22 under CAFA, defendants argue that even if CAFA does not provide a basis for removal, the
23 Court has federal question jurisdiction under 28 U.S.C. § 1331 because plaintiff's complaint
24 alleges a federal securities claim pursuant to 15 U.S.C. § 78aa.

25      The only claim expressly stated in plaintiff's complaint is a state law claim for breach of
26 fiduciary duty.  Generally, "the plaintiff [is] the master of the claim" and "may avoid federal
27 jurisdiction by exclusive reliance on state law."  See e.g. Caterpillar, Inc. v. Williams, 482 U.S.
28 386, 392 (1987).  A "state law claim arises under federal law," however, where (1) "federal law

11

1    completely preempts [the] state law" invoked by the complaint; (2) the state claim "is
2    necessarily federal in character"; or (3) "the right to relief requires the resolution of a
3    substantial, disputed federal question." See ARCO Environmental Remediation, L.L.C. v.
4    Montana, 213 F.3d 1108, 1114 (9th Cir. 2000).

   The Securities Exchange Act ("Exchange Act") provides: "The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder . . . and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter . . . ." See 15 U.S.C. § 78aa. Relying on Sparta Surgical Corp. v. National Ass'n of Securities Dealers, 159 F.3d 1209, 1211 (9th Cir. 1998), defendants argue that this provision grants the Court exclusive jurisdiction over the misleading proxy statement claim, despite such claim's having been labeled a state law claim for breach of fiduciary duty, because § 14(a) of the Exchange Act imposes liability for such violations.[7]

   In Sparta, the plaintiff brought suit under a complaint alleging that the National Association of Securities Dealers ("NASD") breached a contract by violating its own exchange rules. The Ninth Circuit held the claim came within the exclusive jurisdiction of the federal courts, even though the complaint pleaded only state law claims. See Sparta, 159 F.3d at 1212. In particular, the Ninth Circuit noted that the rules NASD was alleged to have violated "were issued pursuant to the Exchange Act's directive that self-regulatory organizations adopt rules and by-laws in conformance with the Exchange Act." See id. As a result, the propriety of NASD's conduct could only be determined in light of federal law: "If NASD's actions conformed to the [federally-required] rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts 'exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder . . . .'" See id.

   One district court faced with a state law claim for breach of fiduciary duty based on

---

[7] Defendants note that the Labow and Gordon complaints contain the same factual allegations with respect to defendants' proxy statements, but that the Gordon complaint frames those allegations as a federal securities claim pursuant to § 14(a) of the Exchange Act.

alleged misleading proxy statements has distinguished Sparta, however, finding such claim did not give rise to federal jurisdiction. In Klein v. Southwest Gas Corp., 1999 WL 33944685 (S.D. Cal. Aug. 3, 1999), where the alleged breach of fiduciary was based on violations that also could have given rise to liability under § 14(a) of the Exchange Act, the district court held that it did not have "exclusive jurisdiction" over the claim because

> unlike the plaintiff in Sparta . . . plaintiffs do not predicate their . . . claims on specific violations of federal securities laws, an area committed exclusively to federal jurisdiction. A finding that defendants violated federal securities laws is not essential to the question of whether defendants breached their fiduciary obligations to plaintiffs.

See id. at 5.

In another case involving a state law claim for breach of fiduciary duty, albeit not in the area of proxy solicitation, the district court made a similar observation:

> In Sparta, the NASD rules were essential to the [plaintiff's] breach of contract claim because the rules themselves were the terms of the contract that plaintiff alleged NASD breached . . . . Federal law was essential in Sparta because the plaintiff could not prevail without establishing a violation of federal law was the alleged breach of contract. Here, Plaintiff brings a claim for breach of fiduciary duty. State common law, not NASD rules, define the scope of Defendant's fiduciary duty to Plaintiff . . . . [E]stablishing a violation [of federal law] is not a necessary element of plaintiff's claims.

See Roskind v. Morgan Stanley, 165 F. Supp. 2d 1059, 1066-1067 (N.D. Cal. 2001); see also Gargiulo v. Decker, 2005 WL 755771 at *2-3 (C.D. Cal. March 30, 2005) (finding state law claim for breach of fiduciary raised no federal claim because "although the complaint discusses possible violations of federal securities law, such references are not 'essential elements' of any of Plaintiff's state law claims").

The Court finds the reasoning of the above-cited cases persuasive. Here, plaintiff need not prove that defendants' proxy statements, or, for that matter, any of defendants' other alleged conduct, violated federal law in order to prevail on his state law claim for breach of fiduciary duty.[8] Accordingly, the Court finds it lacks federal question jurisdiction over the

---

[8] For the same reasons, the Court finds plaintiff's claim does not require resolution of a "substantial, disputed question of federal law . . . ." See Roskind v. Morgan Stanley, 165 F. Supp. 2d at 1066 (quoting Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 22 (1983)).

Labow action.

### C. Supplemental Jurisdiction

Finally, defendants argue that by consolidating the Labow action with the Gordon and Lewis actions, both of which actions allege federal claims arising out of the same transaction at issue in the Labow action, the Court acquired supplemental jurisdiction over the Labow action pursuant to 28 U.S.C. § 1367. Defendants rely exclusively on two district court decisions from other circuits, Cohen v. Reed, 868 F. Supp. 489, 494 (E.D.N.Y. 1994), and Simcox v. McDermott Int'l, Inc., 1993 U.S. Dist. LEXIS 1802 (S.D. Tex. Dec. 21, 2003). Defendants concede, however, that "a clear majority" of courts have reached "the opposite conclusion." (See Opp. at 16.)

Indeed, plaintiff cites twelve cases, including one from this district, holding that consolidation does not give rise to supplemental jurisdiction. See e.g. McClelland v. Longhitano, 140 F. Supp. 2d 201, 203 (N.D. N.Y. 2001) ("Almost every single authority to address this issue has concluded that the supplemental jurisdiction statute cannot be used in this manner"); Pacific Bell v. Covad Communications Company, 1999 WL 390840 at *3 (N.D. Cal. June 8, 1999) ("The supplemental-jurisdiction statute is not a source of original subject matter jurisdiction.") (quoting Ahearn v. Charter Twp. of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996)); In re Estate of Tabas, 879 F. Supp. 464, 467 (E.D. Pa. 1995) (holding "the supplemental jurisdiction statute does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action" even where "such an approach would have the benefits of efficiency"). This Court, in accordance with the reasoning of the majority of district courts to have addressed the issue, finds consolidation is not a means by which a district court may acquire jurisdiction.

Accordingly, the Court concludes it does not have supplemental jurisdiction over the Labow action by reason of its consolidation with the Lewis and Gordon actions.

### CONCLUSION

For the reasons set forth above, plaintiff's motion to remand the Labow action, Case No. C 05-2328, is hereby GRANTED; the Court's June 17, 2005 order consolidating the

1  Labow action with the Lewis and Gordon cases is hereby VACATED; and said action is
2  hereby REMANDED, pursuant to 28 U.S.C. § 1447(d), to the California Superior Court for the
3  City and County of San Francisco.  Case No. C-05-0969 remains before this Court.
4     **IT IS SO ORDERED.**
5  Dated: July 27, 2005

_____
MAXINE M. CHESNEY
United States District Judge