United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re: TEXTAINER PARTNERSHIP          No. C-05-0969 MMC
     SECURITIES LITIGATION

12                                          **ORDER GRANTING IN PART AND
                                            DENYING IN PART TEXTAINER**
13   _____ **DEFENDANTS' MOTION TO DISMISS;
                                            GRANTING RFH'S MOTION TO**
14                                          **DISMISS; VACATING HEARING;
                                            CONTINUING CASE MANAGEMENT**
15   THIS DOCUMENT RELATES TO:             **CONFERENCE**
16   ALL ACTIONS
     _____/ (Docket Nos. 125, 126)
17

18         Before the Court are two separate motions to dismiss plaintiff Stephen L. Craig's

19   Consolidated and Amended Class Action Complaint ("Complaint"), pursuant to Rule

20   12(b)(6) of the Federal Rules of Civil Procedure.  The motions are filed, respectively, by: (1)

21   defendants Textainer Financial Services Corporation ("Textainer Financial"), Textainer

22   Equipment Management, Ltd. ("Textainer Equipment"), Textainer Capital Corporation

23   ("Textainer Capital"), Textainer Group Holdings, Ltd. ("Textainer Holdings"), TCC

24   Equipment Income Fund, L.P. ("Textainer I"), TCC Equipment Income Fund II, L.P.

25   ("Textainer II"), TCC Equipment Income Fund III, L.P. ("Textainer III"), TCC Equipment

26   Income Fund IV, L.P. ("Textainer IV"), TCC Equipment Income Fund V, L.P. ("Textainer

27   V"), TCC Equipment Income Fund VI, L.P. ("Textainer VI") (collectively "Textainer

28   Partnerships"), and John A. Maccarone ("Maccarone") (collectively, "Textainer

defendants")[1]; and (2) defendant RFH, Ltd. ("RFH").  Plaintiff has filed a consolidated

opposition to the motions, to which the Textainer defendants and RFH separately have

replied.  Having considered the papers submitted in support of and in opposition to the

motions, the Court finds the matters appropriate for decision without oral argument, see

Civil L.R. 7-1(b), VACATES the November 18, 2005 hearing, and rules as follows.

## BACKGROUND

The instant action is a purported class action arising from the sale of the assets of

the Textainer Partnerships to RFH ("Asset Sale").  The following background section is

taken from the allegations of the Complaint.

Textainer Equipment was an associate general partner, and Textainer Financial was

the managing general partner, of the Textainer Partnerships.  (See Compl. ¶¶ 8-9.)

Textainer Capital was the owner, and Maccarone was president, of Textainer Financial.

(See id. ¶¶ 11.)  Textainer Holdings was "the umbrella company for and owner of" Textainer

Equipment, Textainer Financial, and Textainer Capital.  (See id. ¶ 12.)

Each Textainer Partnership owned a fleet of shipping containers, which they leased

to international shipping lines; the shipping containers and the leases thereof were the

primary assets of the Textainer Partnerships.  (See Compl. ¶¶ 2, 7, 18.)  Textainer

Management was responsible for management of the Textainer Partnerships' leasing

operations.  (See id. ¶ 8.)

Textainer Holdings created an Investment Advisory Committee ("IAC") to advise the

general partners on operations and financial aspects of the Textainer Partnerships.

(See id. ¶ 24.)   In May 2004, the IAC decided to seek bids for the assets of the Textainer

Partnerships, and sent out information packets to potential bidders.  Bids were subject to

the condition that the purchaser agree to accept a contract with Textainer Management for

its continued management of the shipping container leases.  (See id. ¶ 24.)  Plaintiff alleges

this condition eliminated many potential bidders who did not want or need Textainer

---

[1] Although the Textainer defendants additionally purport to bring their motion to
dismiss on behalf of Textainer Limited, no claim is asserted against that entity.

1   Management to manage the leases, and had the effect of limiting the price that a potential

2   bidder was willing to pay for the assets.  (See id. ¶ 24.)

3        The highest bid was a joint bid submitted in June 2004 by two entities, Hakman and

4   Fortis Bank, who subsequently were joined by a third entity, P&R, to form RFH.  (See id.

5   ¶¶ 25, 28.)  Accordingly to plaintiff, "[t]he original bid prices which RFH agreed to pay were

6   effective as of July 1, 2004 and were adjusted downwards as of January 1, 2005[.]" (See id.

7   ¶ 25.)  On November 30, 2004, each of the Textainer Partnerships entered into an asset

8   sale agreement with RFH, subject to approval by the "affirmative vote of Limited Partners

9   holding more than 50% of units of limited partnership interest in each of the Partnerships

10  that were outstanding" as of January 20, 2005.  (See id. ¶ 30.)

11       To secure the approval of the limited partners, the Textainer Defendants

12  disseminated proxy statements, which were identical in all relevant aspects, to the limited

13  partners of each of the six partnerships.  (See id. ¶ 31.)  Included with the proxy statements

14  was a cover letter, dated January 21, 2005, written by Maccarone ("Maccarone letter"),

15  which stated that the general partners believed the Asset Sale was "fair to and in the best

16  interests of the limited partners."  (See id. ¶ 35.)  On March 21, 2005, the limited partners of

17  each of the Textainer Partnerships voted to approve the Asset Sale, which was completed

18  on April 18, 2005.  (See id. ¶ 37.)

19       Plaintiff contends that the proxy statements and the Maccarone letter were materially

20  false and misleading because (1) they failed to disclose that, between the date the

21  Textainer Defendants and RFH agreed on a price for the Asset Sale and the date of the

22  proxy statements, the price of shipping containers had increased by approximately 18-20%,

23  and (2) they failed to disclose that the assets were "being sold at less than the highest

24  price" by reason of the Textainer Defendants' requirement that Textainer Management

25  continue to manage the leases for the purchaser.  (See id. ¶ 34.)

26       On August 24, 2005, plaintiff filed the instant Complaint against defendants,

27  asserting violations of §§ 14(a) and 20(a) of the Securities and Exchange Act of 1934

28  ("Exchange Act"), and state law claims for breach of fiduciary duty and aiding and abetting

1  such breaches.  (See id. ¶¶ 44-65.)  The instant putative class action is asserted on behalf

2  of "all persons who were limited partners of the Textainer Partnerships on the date the

3  Proxy Statements were filed with the SEC and disseminated to the Limited Partners."  (See

4  id. ¶ 38.)

5  **LEGAL STANDARD**

6  A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

7  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

8  entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be

9  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

10  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699

11  (9th Cir. 1990).

12  Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

13  material beyond the pleadings.  See Hal Roach Studios, Inc. v. Richard Feiner And Co.,

14  Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Material that is properly submitted as part

15  of the complaint, however, may be considered.  See id.  Documents whose contents are

16  alleged in the complaint, and whose authenticity no party questions, but which are not

17  physically attached to the pleading, also may be considered.  See Branch v. Tunnell, 14

18  F.3d 449, 454 (9th Cir. 1994).  In addition, the Court may consider any document "the

19  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

20  relies," regardless of whether the document is referred to in the complaint.  See Parrino v.

21  FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that

22  are subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d

23  1279, 1282 (9th Cir. 1986).  In analyzing a motion to dismiss, the Court must accept as true

24  all material allegations in the complaint, and construe them in the light most favorable to the

25  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

26  The Court may disregard factual allegations if such allegations are contradicted by the facts

27  established by reference to exhibits attached to the complaint.  See Durning v. First Boston

28  Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  Conclusory allegations, unsupported by the

4

facts alleged, need not be accepted as true.  See Holden v. Hagopian, 978 F.2d 1115,

1121 (9th Cir. 1992).

**DISCUSSION**

**A.  Section 14(a) Claim**

Plaintiff's claim for violation of § 14(a) of the Exchange Act, and Rule 14a-9

promulgated thereunder, is asserted against the Textainer Defendants only.  (See Compl.

¶ 45.)  The Textainer Defendants move to dismiss said claim, both for failure to state a

claim and for failure to comply with the pleading requirements of the Private Securities

Litigation Reform Act ("PSLRA").

Section 14(a) makes it unlawful for any person to solicit, in violation of regulations

promulgated by the SEC, "any proxy or consent or authorization in respect of any security

. . . registered pursuant to section 78l."  See 15 U.S.C. § 78n(a).  SEC Rule 14a-9 provides:

"No solicitation subject to this regulation shall be made by means of any proxy statement . .

. containing any statement which, at the time and in light of the circumstances under which

it is made, is false or misleading with respect to any material fact, or which omits to state

any material fact necessary in order to make the statements therein not false or

misleading."  See 17 C.F.R. § 240.14a-9(a).  The United States Supreme Court has held

that § 14(a) "was intended to promote the free exercise of the voting rights of stockholders

by ensuring that proxies would be solicited with explanation to the stockholder of the real

nature of the questions for which authority to cast his vote is sought."  See TSC Industries,

Inc. v. Northway, Inc., 426 U.S. 438, 444 (1976) (internal quotations and citations omitted).

Thus, § 14(a) acts to "ensure disclosures by corporate management in order to enable the

shareholders to make an informed choice."  See id. at 448.

Plaintiff alleges that the following statements in the proxy statements were materially

misleading in violation of § 14(a) and Rule 14a-9:

- • Market conditions at historically high levels have increased the attractiveness of the container fleet to prospective buyers.

- • Selling now avoids having to liquidate assets under time constraints and uncertain market conditions in future years due to expiration of

5

1    normal lives of the Textainer Partnerships.

2        •    Selling now eliminates the risk and uncertainty of possible future
             downturns in market conditions for leased and used containers.
3
4    (See Compl. ¶ 33 (quoting Proxy Statements at 4); see also Textainer Defendants' Motion

5    to Dismiss, Ex. A (Proxy Statement) at 4.)  Plaintiff further alleges that the following

6    statement in the Maccarone letter was materially false and misleading in violation of § 14(a)

7    and Rule 14a-9: "The Asset Sale will provide you with the opportunity to liquidate your

8    investment in the Partnership[s] for cash at a price and on terms that the general partners

9    believe are fair to and in the best interests of the limited partners of the Partnership[s]."

10   (See Compl. ¶ 35; see also Textainer Defendants' Motion to Dismiss, Ex. A (Maccarone

     Letter) at 2.)

11
12       As noted, plaintiff contends the above-referenced statements were materially false

13   and misleading because (1) they failed to disclose that, between the date the Textainer

14   Defendants and RFH agreed on a price for the Asset Sale and the date of the proxy

15   statements, the price of shipping containers had increased by approximately 18-20%, and

16   (2) they failed to disclose that the assets were "being sold at less than the highest price" as

17   a result of the Textainer Defendants' requirement that Textainer Management continue to

     manage the leases for the purchaser.  (See id. ¶ 34.)
18

19                **1.    Applicability of PSLRA's Heightened Pleading Standard for
                         Misleading Statements and Omissions**
20
21       The Textainer Defendants argue that because plaintiff's complaint alleges the proxy

22   statements were false or misleading, it is subject to the heightened pleading standard

23   imposed by the PSLRA at 15 U.S.C. § 78u-4(b)(1).  In response, plaintiff argues that the

24   PSLRA pleading standard applies only to claims alleging fraud, and that it is inapplicable

25   here because plaintiff's § 14(a) claim is based on negligent conduct.  For the reasons set

26   forth below, the Court agrees with the Textainer Defendants.

27       The relevant section of the PSLRA sets forth two heightened pleading standards,

28   one with respect to misleading statements and omissions, and one with respect to

                                            6

1    allegations of the requisite state of mind:[2]

2         (b) Requirements for securities fraud actions

3              (1) Misleading statements and omissions

4              In any private action arising under this chapter in which the
              plaintiff alleges that the defendant--

5
                   (A) made an untrue statement of a material fact; or

6
                   (B) omitted to state a material fact necessary in order to
7              make the statements made, in the light of the circumstances in
              which they were made, not misleading;

8
              the complaint shall specify each statement alleged to have been
9              misleading, the reason or reasons why the statement is
              misleading, and, if an allegation regarding the statement or
10             omission is made on information and belief, the complaint shall
              state with particularity all facts on which that belief is formed.

11
              (2) Required state of mind

12
              In any private action arising under this chapter in which the
13             plaintiff may recover money damages only on proof that the
              defendant acted with a particular state of mind, the complaint
14             shall, with respect to each act or omission alleged to violate this
              chapter, state with particularity facts giving rise to a strong
15             inference that the defendant acted with the required state of
              mind.

16   See 15 U.S.C. § 78u-4(b).

17
          The PSLRA expressly states that its heightened pleading standard for misleading
18
     statements and omissions applies to "any private action arising under [the Exchange Act]."
19
     See 15 U.S.C. § 78u-4(b)(1) (emphasis added).  As noted above, § 14(a) is part of the
20
     Exchange Act.  "If the language [of the statute] is plain and its meaning clear, that is the
21
     end of [the Court's] inquiry."  In re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970,
22
     975 (9th Cir. 1999).
23
          Numerous courts have held that § 14(a) claims may be based on negligent conduct.
24
     See, e.g., Wilson v. Great American Industries, Inc., 855 F.2d 987, 995 (2d Cir. 1988);
25

26   _____

27        [2] Because the Textainer Defendants do not argue that the complaint fails to comply
     with the PSLRA's heightened pleading standard with respect to allegations of state of mind,
28   the Court does not address whether that pleading standard is applicable to the instant
     case.

1    Gould v. American Steamship Co., 535 F.2d 761, 777 (3d Cir. 1976); In re McKesson

2    HBOC Inc. Securities Litigation, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000).  Although

3    the heading to § 78u-4(b), "Requirements for securities fraud actions," see 15 U.S.C.

4    § 78u-4(b), might suggest that the heightened pleading standards therein apply only to

5    securities fraud actions, the Supreme Court has held that "the title of a statute and the

6    heading of a section cannot limit the plain meaning of the text."  See Brotherhood of

7    Railroad Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 528-29 (1947).  Here, as noted,

8    the text of the PSLRA expressly states that the heightened pleading standard for

9    misleading statements and omissions applies to "any private action" arising under the

10    Exchange Act.  See 15 U.S.C. § 78u-4(b)(1).  Accordingly, the Court finds the heightened

11    pleading standard applies to § 14(a) claims and, consequently, plaintiff must "specify each

12    statement alleged to have been misleading, the reason or reasons why the statement is

13    misleading, and, if an allegation regarding the statement or omission is made on

14    information and belief, the complaint shall state with particularity all facts on which that

15    belief is formed."  See 15 U.S.C. § 78u-4(b)(1).[3]

16                    **2.  Failure to Disclose Alleged Increase in Market Price**

17            Plaintiff alleges the Textainer Defendants' failure to disclose that, between the date

18    the Textainer Defendants and RFH agreed on a price for the Asset Sale and the date of the

19    proxy statements, the price of shipping containers had increased by approximately 18-20%,

20    rendered materially misleading the three statements in the proxy statements quoted above.

21

22            [3] Other courts that have considered the issue likewise have held that the PSLRA's

23    heightened pleading standard for misleading statements and omissions applies to § 14(a)
       claims predicated on negligence.  See In re JP Morgan Chase Securities Litigation, 363

24    F.Supp.2d 595, 636 (S.D.N.Y. 2005) ("Even if plaintiffs had not brought a Section 14(a)
       claim sounding in fraud, pursuant to the PSLRA, 15 U.S.C. § 78u-4(b)(1), they would still

25    have had to plead facts indicating why the alleged misrepresentations were misleading.");
       Bond Opportunity Fund v. Unilab Corp., 2003 WL 21058251 at *5 (S.D.N.Y. 2003)

26    (dismissing negligence-based § 14(a) claims for failing to adequately allege false and
       misleading statement under PSLRA pleading standard); In re U.S. West, Inc. Securities

27    Litigation, 201 F.Supp.2d 302, 305-06 (D. Del. 2002) (holding § 78u-4(b)(1) applied to
       plaintiffs' § 14(a) claims based on negligence); Giarraputo v. UNUMProvident Corp., 2000

28    WL 1701294 at *10 (D. Me. 2000) (applying § 78u-4(b)(1) pleading standard to § 14(a)
       claim "even though it does not allege fraud").

1   For the reasons set forth below, however, plaintiff's complaint fails to articulate with the

2   requisite particularity why the statements made in the proxy statements were materially

3   misleading as opposed to merely incomplete.  See Brody v. Transitional Hospitals Corp.,

4   280 F.3d 997, 1006 (9th Cir. 2002) ("plaintiffs' complaint must specify the reason or

5   reasons why the statements made by [defendant] were misleading or untrue, not simply

6   why the statements were incomplete.").

7         The proxy statements disclosed that "[b]eginning in 2004, a worldwide steel shortage

8   caused significant increases in new container prices and limited the number of new

9   containers being built.  As a result, demand for leased containers increased in the first

10  quarter of 2004 and has remained strong through all of 2004."  (See Textainer Defendants'

11  Motion to Dismiss, Ex. A (Proxy Statement) at 14.)  The proxy statements also stated that,

12  as of the first and second quarters of 2004, "the container utilization levels of the leasing

13  market had reached record highs" and that "[a]t the date of th[e] Proxy Statement, usage

14  levels remain[ed] high."  (See id. at 22.)  Although the proxy statements disclosed

15  significant increases in container prices in 2004 and the continuing high demand for them

16  as of the date of the proxy statements, plaintiff contends that the proxy statements were

17  materially misleading because the Textainer Defendants omitted to state the precise

18  amount of the increase in market prices.

19        The three statements plaintiff alleges are materially misleading – "[m]arket

20  conditions at historically high levels have increased the attractiveness of the container fleet

21  to prospective buyers," "[s]elling now avoids having to liquidate assets under time

22  constraints and uncertain market conditions in future years due to expiration of normal lives

23  of the Textainer Partnerships," and "[s]elling now eliminates the risk and uncertainty of

24  possible future downturns in market conditions for leased and used containers" (see

25  Compl. ¶ 33) – are not alleged by plaintiff to be untrue.  Although the Ninth Circuit has

26  recognized that "a statement that is literally true can be misleading and thus actionable

27  under the securities laws," it has further noted that "[o]ften, a statement will not mislead

28  even if it is incomplete or does not include all relevant facts."  See Brody, 280 F.3d at 1006.

1    In <u>Brody</u>, the plaintiffs therein argued that once a disclosure is made, there is a duty to

2    make it complete and accurate; the Ninth Circuit rejected that argument, noting that "[n]o

3    matter how detailed and accurate disclosure statements are, there are likely to be

4    additional details that could have been disclosed but were not."  <u>See id</u>.  The Ninth Circuit

5    held that "[t]o be actionable under the securities laws, an omission must be misleading; in

6    other words it must affirmatively create an impression of a state of affairs that differs in a

7    material way from the one that actually exists."  <u>Id</u>.

8         Here, plaintiff has not identified, with the particularity required by the PSLRA, why, in

9    light of the disclosures noted above with respect to the market for containers in 2004, the

10   Textainer Defendants' omission of the degree of increase in the price of containers caused

11   the three identified statements to be materially misleading.  First, plaintiff fails to allege that

12   the market prices for containers were not readily publicly available.  An omitted fact is

13   material if it "would have been viewed by the reasonable investor as having significantly

14   altered the 'total' mix of information made available."  <u>See</u> <u>TSC Industries</u>, 426 U.S. at 449.

15   "The 'total mix' of information normally includes information that is and has been in the

16   readily available general public domain and facts known or reasonably available to the

17   shareholders."  <u>Kapps v. Torch Offshore, Inc.</u>, 379 F.3d 207, 216 (5th Cir. 2004) (citation

18   omitted).  Consequently, it has been held that the securities laws do not require disclosure

19   of information that is readily available in the public domain.  <u>See</u>, <u>e.g.</u>, <u>In re Adams Golf,</u>

20   <u>Inc. Securities Litigation</u>, 381 F.3d 267, 279 (3d Cir. 2004) (holding defendant "not duty-

21   bound to disclose general industry-wide trends easily discernable from information already

22   available in the public domain"); <u>see</u> <u>also</u> <u>Whirlpool Financial Corp. v. GN Holdings, Inc.</u>, 67

23   F.3d 605, 609 (7th Cir. 1995) (noting "securities laws require the disclosure of information

24   that is not otherwise in the public domain").  One ordinarily would expect that investors in a

25   limited partnership whose sole assets were shipping containers would be aware of general

26   trends in the market for such containers.  As noted, plaintiff has not alleged that such

27   information was not readily available to the limited partners.

28        Additionally, plaintiff fails to allege the source of his information that there was an 18-

1   20% increase in the price of containers during the relevant time period, and fails to allege

2   that the alleged price increase applies to the particular type of containers owned by the

3   Textainer Partnerships.  He alleges only that the complaint is based "upon personal

4   knowledge as to himself and his own acts and upon information and belief as to all other

5   matters based upon the investigation made by and through his attorneys, which included

6   (among other things) a review of public filings with the Securities and Exchange

7   Commission."  (See Compl. at 1.)  When an allegation about a purportedly misleading

8   statement or omission "is made on information and belief, the PSLRA requires that the

9   complaint "state with particularity all facts on which that belief is formed."  See 15 U.S.C.

10  § 78u-4(b)(1).  The Ninth Circuit has held that the above-referenced section of the PLSRA

11  requires a complaint to "provide all the facts forming the basis for [that] belief in great

12  detail" and to "provide a list of all relevant circumstances in great detail."  See Silicon

13  Graphics, 183 F.3d at 983-84.  Additionally, the PSLRA requires a complaint to reveal the

14  "sources of [plaintiff's] information," "corroborating details," and facts demonstrating the

15  reliability of his assertions.  See id. at 985.  Here, plaintiff does not allege the source of his

16  allegation that the price RFH paid for the assets of the Textainer Partnerships was "at least

17  18-20% less than the fair market price."  (See id. ¶ 2.)  Although plaintiff cites a Wall Street

18  Journal article, dated March 7, 2005, for the proposition that new container prices rose 40%

19  in 2004, (see Compl. ¶ 29), he cites no source for his contention that container prices rose

20  18-20% between July 2004 and January 2005.  Moreover, although plaintiff alleges that

21  "[t]he prices for used shipping containers . . . enjoyed an even greater increase in value

22  since prices for used containers are directly related to the cost of replacement by new

23  containers," plaintiff fails to allege the source of that information, or to allege whether, and

24  why, he contends the general increase in the market price for new and used containers

25  applied to the specific containers owned by the Textainer Partnerships.  As defendants

26  note, the complaint alleges that many of the containers owned by the Textainer

27  Partnerships are subject to "master operating leases" and "long-term lease agreements."

28  (See Compl. ¶¶ 19-20.)  The Court cannot assume that general market prices for new

11

and/or used containers necessarily would apply to containers encumbered by long-term leases.  Accordingly, plaintiff has not alleged with particularity the source of his information that prices for containers increased 18-20% between July 2004 and January 2005, or that the general market price for new and/or used containers applies to the particular containers owned by the Textainer Partnerships.[4]

Accordingly, the Court finds that plaintiff has failed to plead, with the requisite particularity, his claim under § 14(a) that the proxy statements were materially misleading by reason of a failure to disclose that the market price for containers had increased 18-20% during the relevant time period.  The Court will dismiss such claim with leave to amend.

### 3. Failure to Disclose Sale Price Was Lower Due to Requirement Textainer Management Continue to Manage Leases

The Textainer Defendants further argue that plaintiff cannot state a § 14(a) claim based on the Textainer Defendants' failure to inform the limited partners, in the proxy statements, that the sale price allegedly was lower than it otherwise would have been as a result of the requirement that Textainer Management continue to manage the leases for the purchaser.  The Textainer Defendants point out that the proxy statements disclosed the requirement that the prospective purchaser enter into a contract with Textainer Management to manage the leases, and argue that, under Brody, there was no duty to disclose how that requirement might have affected the sale price.

In the proxy statements, the Textainer Defendants disclosed that "acceptance of a management agreement with [Textainer Management] was one of the conditions to an acceptable bid during the bidding process and is one of the conditions to the Asset Sale Agreement."  (See Defs.' Mot. to Dismiss, Ex. A (Proxy Statement) at 20.)  Additionally, the Textainer Defendants disclosed the principal terms of the management agreement and how the amount of their management fees would change if the Asset Sale were approved.  (See

---

[4] The Court does not reach the Textainer Defendants' argument that the alleged missing information was disclosed to the limited partners, prior to their vote approving the Asset Sale, in a March 14, 2005 Supplement to the Proxy Statement ("Supplement").  As the Supplement is not mentioned in the complaint, the Court may not consider it in ruling on the instant motion to dismiss.

12

1   id. at 20-21.)[5]

2        As noted, the Ninth Circuit has held that true, but incomplete, statements do not

3   violate the securities laws unless they are also misleading.  See Brody, 280 F.3d at 1006.

4   Moreover, "[s]ection 14(a) and Rule 14a-9 do not obligate corporate officials to present, no

5   matter how unlikely, every conceivable argument against their own recommendations," as

6   long as they "disclose all known material facts so that shareholders can make informed

7   choices."  See Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir. 2000).  Indeed,

8   "federal law is satisfied as long as the proxy materials fully and fairly set forth the relevant

9   and material facts from which a reasonable shareholder may draw his own conclusions as

10  to how to vote."  See New England Anti-Vivisection Society, Inc. v. U.S. Surgical Corp.,

11  Inc., 889 F.2d 1198, 1202 (1st Cir. 1989).  Here, the Textainer Defendants set forth in the

12  proxy statements the material facts as to the requirement that bidders retain a

13  management contract with Textainer Management, and the key terms of that management

14  contract.  Based on these disclosed facts, any Textainer limited partner could infer that the

15  requirement that the purchaser accept a management contract with Textainer Management

16  may have affected the ultimate bid price in some fashion, but not necessarily downward.

17  Without further details, one could as easily assume that the availability of a seasoned lease

18  manager would result in a higher bid than would otherwise be the case.  Consequently, the

19  limited partners would not necessarily be aware that the sales price was adversely affected.

20

21        Plaintiff, however, has not alleged, with the particularity required by the PSLRA, the

22  basis for his contention that the bid requirement "had the effect of eliminating many

23  potential bidders for the Partnerships' assets as these potential purchasers did not want or

24  need Textainer Management to be granted a management contract in connection with any

25  sale of the Partnership's assets and/or had the effect of limiting the price that a potential

26

27        [5] Pursuant to the Proxy Statements, Textainer Management expected to earn

28  approximately 4% less in management fees if the Asset Sale were approved than if the
    Textainer Partnerships continued in operation.  (See id. at 21.)

13

1   bidder was willing to pay for the Partnerships' assets."  (See Compl. ¶ 24.)  Plaintiff does

2   not allege, for example, that the Textainer Defendants failed to disclose they received and

3   rejected higher bids because the bidder would not accept a management contract with

4   Textainer Management, or that the Textainer Defendants were aware that a particular

5   bidder reduced the amount of its bid because of the requirement that it enter into a contract

6   with Textainer Management.

7       Accordingly, the Court finds plaintiff has not adequately pleaded his § 14(a) claim

8   based on the Textainer Defendants' alleged failure to inform the limited partners in the

9   proxy statements that the sale price was lower than it otherwise would have been because

10  of the requirement that Textainer Management continue to manage the leases for the

11  purchaser.  The Court will dismiss said claim with leave to amend.

12                  **4.  Statement About Fairness of Asset Sale**

13      Plaintiff alleges that the Textainer Defendants are liable under § 14(a) because the

14  Maccarone Letter, which states that the Asset Sale was on terms that "the general partners

15  believe are fair and in the best interests of the limited partners," is materially false or

16  misleading because the Asset Sale was priced below prevailing market value and therefore

17  was not in the best interests of the limited partners.  (See Compl. ¶ 36.)  The Textainer

18  Defendants contend plaintiff has failed to plead, with the requisite specificity, that the

19  statement was objectively false and that the Textainer Defendants disbelieved the opinion.

20  The Court again agrees with defendants.

21      The statement at issue in the Maccarone Letter is an opinion.  The Supreme Court

22  has recognized that "a statement of belief by corporate directors about a recommended

23  course of action" may be material, and thus, actionable under § 14(a), but such liability

24  cannot be based merely on the defendant's subjective disbelief of the stated opinion,

25  without "objective evidence . . . that the statement also expressly or impliedly asserted

26  something false or misleading about its subject matter."  See Virginia Bankshares, Inc. v.

27  Sandberg, 501 U.S. 1083, 1095-96 (1991).  All of the cases the Court has located that

28  have addressed the issue since Virginia Bankshares have concluded that a defendant may

1  be liable for statements of opinion only if (1) the speaker did not actually hold the opinion,

2  and (2) the opinion was objectively false or misleading.  See In re AOL Time Warner, Inc.

3  Securities and "ERISA" Litigation, 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004); In re Reliance

4  Securities Litigation, 135 F. Supp. 2d 480, 515 (D. Del. 2001); In re McKesson HBOC, Inc.

5  Securities Litigation, 126 F. Supp. 2d at 1265.  This Court agrees that plaintiff must allege

6  both elements to state a § 14(a) claim against the Textainer Defendants based on a

7  materially false or misleading statement of opinion in the Maccarone Letter.

8       Plaintiff, however, fails to allege that the Textainer Defendants did not actually hold

9  the opinion stated in the Maccarone letter.  Moreover, for the reasons set forth above in

10  sections A.2 and A.3, plaintiff fails to adequately allege objective falsity.  Accordingly,

11  plaintiff has failed to state a § 14(a) claim based on the statement of opinion in the

12  Maccarone Letter that the Asset Sale was on terms that "the general partners believe are

13  fair and in the best interests of the limited partners," and the Court will dismiss said claim

14  with leave to amend.

15          **5.      Standing as to Claims on Behalf of Limited Partners of Textainer I
                      and Textainer II**

16       The Textainer Defendants argue that plaintiff lacks standing to assert any claims on

17  behalf of the limited partners of Textainer I and Textainer II, because plaintiff's certification,

18  previously filed in this action, states that he owns units only in Textainer III, IV, V, and VI.

19  (See Cera Decl., filed May 20, 2005, Ex. A (Certification of Plaintiff.)) The Textainer

20  Defendants note that a § 14(a) claim may be brought only by "interest-holders with voting

21  rights."  See 7547 Corp. v. Parker & Paisley Development Partners, L.P., 38 F.3d 211 (5th

22  Cir. 1994).  Plaintiff, who has voting rights in four of the six Textainer Partnerships, argues

23  he has standing to assert claims on behalf of the limited partners in all six partnerships

24  because the facts and issues relating to each partnership are identical.

25       In support of this argument, plaintiff relies on La Mar v. H & B Novelty & Loan Co.,

26  489 F.2d 461 (9th Cir. 1973).  La Mar involved two separate cases, one in which the

27  plaintiff filed a class action for violations of the Truth in Lending Act against all pawn

28

brokers licensed to conduct business in Oregon, although the plaintiff personally had

engaged in business with only one such pawn broker, and a second case in which the

plaintiff filed a class action against eight airlines for violation of the Federal Aviation Act, to

recover overcharges with respect to ticket prices, although he had purchased tickets from

only two of the eight airlines.  See id. at 463.  The Ninth Circuit stated that it assumed the

plaintiffs had standing in each case because each plaintiff was "injured by a method of

dealing more or less common to all defendants."  See id. at 464.  Although the Court found

class certification inappropriate, pursuant to Rule 23 of the Federal Rules of Civil

Procedure, because "typicality is lacking when the representative plaintiff's cause of action

is against a defendant unrelated to the defendants against whom the cause of action of the

members of the class lies," see id. at 465, the court also stated its holding with respect to

Rule 23 was not intended to "embrace situations in which all injuries are the result of a

conspiracy or concerted schemes between the defendants at whose hands the class

suffered injury" or to "instances in which all defendants are juridically related in a manner

that suggests a single resolution of the dispute would be expeditious."  See id. at 466.  In

the instant case, all of plaintiff's claims are based on "a method of dealing more or less

common to all defendants," see id. at 464, and a "concerted scheme between the

defendants at whose hands the class suffered injury," see id. at 454, specifically, the

manner in which the Asset Sale was conducted, including the dissemination of purportedly

misleading Proxy Statements.[6]

Accordingly, the Court will deny the Textainer Defendants' motion to dismiss all

claims asserted on behalf of the limited partners of Textainer I and Textainer II.

**B.  Section 20 Claim**

---

[6] Although plaintiff argues the Asset Sale was contingent on the approval of the investors in all of the Textainer Partnerships, defendants correctly note the Proxy Statements provide to the contrary.  (See Textainer Defendants' Motion to Dismiss Ex. A (Proxy Statement) at 6-7 ("It is not a condition to the participation of any Partnership in the Asset Sale that all six Textainer Partnerships must participate in the Asset Sale.")).  The Court does not find a lack of such contingency to be dispositive, however.

Plaintiff alleges the Textainer Defendants are additionally liable for violating § 20(a) of the Exchange Act.  (See Compl. ¶¶ 63-65.)  Section 20(a) provides that "every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."  See 15 U.S.C. § 78t(a).  "In order to prove a prima facie case under § 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws . . . and (2) that the defendant exercised actual power or control over the primary violator."  Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Because, as discussed above, plaintiff has failed to allege "an actionable independent underlying violation of the [Exchange] Act," he has not stated a claim for violation of § 20(a).  See In re VeriFone Securities Litigation, 11 F.3d 865, 872 (9th Cir. 1993).

### C.  State Law Claims for Breach of Fiduciary Duty

In addition to his federal claims, plaintiff alleges the Textainer Defendants breached their fiduciary duties of loyalty, care, and candor under state law by making the above-referenced assertedly misleading statements in the proxy statement and the Maccarone Letter.  (See Compl. ¶¶ 50-62.)  Defendants do not contend that a heightened pleading standard applies to plaintiff's state law claims for breach of fiduciary duty.  Consequently, the Court finds plaintiff's complaint "must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"; Rule 8(a)(2)  "requires only that the complaint include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Rule 8(a) of the Federal Rules of Civil Procedure); see also Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995) (holding claim for breach of fiduciary duty subject to notice pleading standard of Rule 8(a)).

### 1.  Claims Against Maccarone, Textainer Capital, and Textainer Holdings

The Textainer Defendants argue that plaintiff's claims for breach of fiduciary duty must be dismissed to the extent they are asserted against Maccarone, Textainer Capital,

1   and Textainer Holdings because said defendants are not alleged to be partners of the

2   Textainer Partnerships and, thus, as a matter of law, owed no fiduciary duty to plaintiff or

3   the other limited partners.

4          As noted above, plaintiff alleges that Textainer Equipment and Textainer Financial

5   are general partners of the Textainer Partnerships.  (See Compl. ¶¶ 8-9.)  Maccarone is

6   alleged to have been president of Textainer Financial, Textainer Capital is alleged to have

7   "owned" Textainer Financial, and Textainer Holdings is alleged to have been "the umbrella

8   company for and owner of Textainer Management, Textainer Financial and Textainer

9   Capital."  (See id. ¶¶ 10-12, 54-56.)

10         Under California law, partners owe fiduciary duties to the partnership and the other

11   partners.  See Cal. Corp. Code § 16404(a).  Under certain circumstances, however,

12   persons who are not partners may nonetheless owe fiduciary duties to the partners and the

13   partnership as a result of their relationship with a partner.  For example, the Ninth Circuit

14   Bankruptcy Appellate Panel, interpreting California law, has held a general partner of a

15   general partner in a limited partnership to be a fiduciary of the limited partnership where

16   such defendant exercised a "high degree of control" over the limited partnership.  See In re

17   Abrams, 229 B.R. 784, 791-92 (9th Cir. BAP 1999).  On the other hand, In re Real Estate

18   Associates Ltd. Partnership Litigation, 223 F. Supp. 2d 1109, 1133-34 (C.D. Cal. 2002), on

19   which the Textainer Defendants rely, held certain officers and directors of a managing

20   general partner did not owe a fiduciary duty to the limited partners because plaintiffs therein

21   had failed to set forth facts sufficient to raise a triable issue as to whether such officers and

22   directors exercised sufficient control over the managing general partner, within the meaning

23   of Abrams; and, accordingly, the district court found it inappropriate to "pierce the

24   partnership veil."  See id.

25         Here, there is no allegation that Maccarone, Textainer Capital, or Textainer Holdings

26   controlled Textainer Equipment, Textainer Financial, or the Textainer Partnerships.

27   Accordingly, the Court will grant the Textainer Defendants' motion to dismiss the claims for

28   breach of fiduciary duty asserted against Maccarone, Textainer Capital, and Textainer

1  Holdings, with leave to amend.

2  ### 2.  Duty of Loyalty

3  Plaintiff alleges the Textainer Defendants breached their duty of loyalty owed to the

4  limited partners because such defendants "engaged in self-dealing and conflicted

5  transactions that were unfair to the Limited Partners by requiring that any purchaser of the

6  assets of the Textainer Partnerships continue to retain the Textainer Defendants as

7  managing agents for those assets."  (See Compl. ¶ 57.)

8  Section 16404(b) of the California Corporations Code provides:

9  A partner's duty of loyalty to the partnership and the other partners includes
   all of the following:

10

11  (1) To account to the partnership and hold as trustee for it any property, profit,
    or benefit derived by the partner in the conduct and winding up of the
    partnership business or derived from a use by the partner of partnership
12  property or information, including the appropriation of a partnership
    opportunity.

13

14  (2) To refrain from dealing with the partnership in the conduct or winding up of
    the partnership business as or on behalf of a party having an interest adverse
    to the partnership.
15

16  (3) To refrain from competing with the partnership in the conduct of the
    partnership business before the dissolution of the partnership.

17  See Cal. Corp. Code § 16404(b).  Recently, a California court held that § 16404(b) does

18  not set forth an exclusive statement of a partner's obligation to the partnership under the

19  duty of loyalty, noting that the statute "leav[es] the articulation of the duty of loyalty to

20  traditional common law processes."  See Enea v. Superior Court, 132 Cal. App. 4th 1559,

21  1565 (2005).  The same court succinctly summarized the duty of loyalty as follows:

22  "'[P]artners may not take advantages for themselves at the expense of the partnership.'"

23  See id. at 1564 (quoting Jones v. Wells Fargo Bank, 112 Cal. App. 4th 1527, 1540 (2003)).

24  ### a.  Ratification of alleged breach of duty of loyalty

25  At the outset, the Textainer Defendants argue that the limited partners approved the

26  Asset Sale with full knowledge of the bidding process, in particular the requirement that the

27  purchaser enter into a management contract with Textainer Management, and that such

28  ratification cures any breach of the duty of loyalty that otherwise might have occurred.  In

19

1  response, plaintiff argues, citing <u>BT-I v. Equitable Life Assurance Society</u>, 75 Cal. App. 4th

2  1406 (1999), that limited partners cannot waive, in a limited partnership agreement,

3  fiduciary duties owed to them.  <u>See id</u>. at 1412 (holding "limited partnership agreement

4  cannot relieve the general partner of its fiduciary duties in matters fundamentally related to

5  the partnership business").  The Textainer Defendants have not argued, however, that the

6  limited partners waived, in the limited partnership agreements, any fiduciary duties owed to

7  them, but rather, as noted, that the limited partners ratified the Textainer Defendants'

8  conduct at a later time.

9       Section 16103 of the California Corporations Code provides:  "All of the partners or a

10  number or percentage specified in the partnership agreement may authorize or ratify, after

11  full disclosure of all material facts, a specific act or transaction that otherwise would violate

12  the duty of loyalty," as long as it is not manifestly unreasonable to do so.  See Cal. Corp.

13  Code § 16103(b)(3)(B).  As discussed above, however, the limited partners did not

14  necessarily receive such "full disclosure," as a condition of the nature here at issue would

15  not necessarily result in a decreased sales price.

16       Accordingly, the Court cannot find as a matter of law that any breach of the duty of

17  loyalty was ratified by the limited partners, and the Textainer Defendants are not entitled to

18  dismissal of this claim.[7]

19                    **b.  Sufficiency of allegations**

20       The Textainer Defendants next argue that plaintiff's allegations are too conclusory to

21  state a claim for breach of the fiduciary duty of loyalty.  As noted, plaintiff alleges the

22  Textainer Defendants "engaged in self-dealing and conflicted transactions that were unfair

23  to the Limited Partners by requiring that any purchaser of the assets of the Textainer

24  Partnerships continue to retain the Textainer Defendants as managing agents for those

25  assets," (<u>see</u> Compl. ¶ 57), and that said requirement "had the effect of either eliminating

26

27       [7] The Court is aware that it has found a similar claim under § 14(a) subject to
28  dismissal.  That claim, however, is subject to the heightened pleading standards of the
PSLRA.

possible bidders or artificially depressing the amounts purchasers were willing to bid," (see id. ¶ 34).  Consequently, according to plaintiffs, "the sale of the Textainer Partnerships' assets on the terms proposed represented a sale at a price below prevailing market values and was, therefore, not in the best interests of the Limited Partners."  (See id. ¶ 36.)  In essence, plaintiff contends the Textainer Defendants deprived the limited partners of the best price for the Textainer Partnerships' assets by requiring bidders to enter into a management contract that benefitted the Textainer Defendants.

It is true, as the Textainer Defendants note, that a partner does not violate the duty of loyalty "merely because the partner's conduct furthers the partner's own interest."  See Cal.Corp.Code § 16404(e).  The purpose of § 16404(e), however, is "to excuse partners from accounting for incidental benefits obtained in the course of partnership activities without detriment to the partnership."  See Enea, 132 Cal. App. 4th at 1566 (emphasis in original).  Here, plaintiff has alleged that the Textainer Defendants' actions harmed the partnerships by reducing the price obtained for the assets of the Textainer Partnerships.  Consequently, § 16404(e) does not apply.

Similarly unpersuasive is the Textainer Defendants' argument that the proxy statements demonstrate they did not profit from the Asset Sale.  The proxy statements do indicate that the Textainer Defendants expected to make slightly less in management fees under the new contract with RFH than they would have expected to earn if the Asset Sale had not been approved.  (See Textainer Defendants' Motion to Dismiss, Ex. A at 21.)  Under plaintiff's theory, however, the Textainer Defendants were not entitled to earn any management fees after the Asset Sale, because the requirement that the purchaser enter into a management contract with Textainer Management served to reduce the price realized in the Asset Sale.

Accordingly, taking the allegations as true, and given the notice pleading standard set forth in Rule 8(a), plaintiff's complaint states a claim for breach of the fiduciary duty of loyalty.  See, e.g., Enea, 132 Cal. App. 4th at 1561, 1566 (finding breach of duty of loyalty where general partners rented partnership property at below market rates); see also

Everett Investors 8 v. McNeil Partners, 114 Cal. App. 4th 411, 424 (2003) (noting "an obvious and essential unfairness in one partner's attempted exploitation of a partnership opportunity for his own personal benefit and to the resulting detriment of his copartners") (internal quotation and citation omitted).

### 2. Duty of Care

Plaintiff alleges that the Textainer Defendants breached the duty of care owed to the limited partners by engaging in the Asset Sale, albeit without alleging precisely how that duty was breached.  (See Compl. ¶¶ 52-56.)  The Textainer Defendants move to dismiss this claim, for failure to plead said defendants acted with the requisite lack of care.

Under California law, "[a] partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."  See Cal. Corp. Code § 16404(c).  Although plaintiff's complaint does not expressly allege that the Textainer Defendants were "grossly negligent or reckless," or that they "engaged in intentional misconduct" or a "knowing violation of the law," plaintiff's allegation that the Textainer Defendants "engaged in self-dealing," (see Compl. ¶ 59), to the detriment of the limited partners, (see id. ¶ 36), is, in essence, the equivalent of such.

Accordingly, the Textainer Defendants are not entitled to dismissal of this claim.

### 3. Duty of Candor/Full Disclosure

Plaintiff alleges that the Textainer Defendants are liable for breaching their "duty of candor" in connection with "the representations made in the Proxy Statements and the Maccarone Letter soliciting [the] Limited Partners' approval of the Asset Sale," and incorporates the allegations previously set forth in support of his claim for violation of § 14(a).  (See Compl. ¶¶ 60-62.)

Of the fiduciary duties owed by partners, "[o]ne of the most important duties created is each partner's duty of full disclosure."  See McCain v. Phoenix Resources, Inc., 185 Cal. App. 3d 575, 579 (1986).  "Partners are trustees for each other, and in all proceedings

connected with the conduct of the partnership every partner is bound to act in the highest

good faith to his copartner and may not obtain any advantage over him in the partnership

affairs by the slightest misrepresentation [or] concealment." See id. (internal quotation and

citation omitted).  As a consequence, "partners have a duty to make a full and fair

disclosure of all matters substantially affecting the value of the partnership." See id.; see

also Neal v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal.3d 176, 188-89 (1971)

(holding, in attorney malpractice action, "[t]he duty of a fiduciary embraces the obligation to

render a full and fair disclosure to the beneficiary of all facts which materially affect his

rights and interests."); cf. Neubauer v. Goldfarb, 108 Cal. App. 4th 47, 62-63 (2003) (noting,

under Delaware law, majority shareholder breaches duty of candor owed to minority

shareholder by failing to disclose fully all facts and circumstances surrounding transaction

involving minority shareholder).

Here, as noted, plaintiff has alleged that the Textainer Defendants failed to disclose

(1) that prices for shipping containers rose 18-20% between July 2004, the date the terms

of the sale were first agreed to, and January 2005, the date the proxy statements were

distributed; and (2) that the price obtained for the assets of the Textainer Partnerships was

depressed as a result of the Textainer Defendants' requirement that the purchaser enter

into a management contract with Textainer Management.  (See Compl. ¶¶ 32, 34.)  The

Textainer Defendants argue that plaintiff's claim for breach of the duty of candor/full

disclosure fails for the same reasons plaintiff's claims fail under § 14(a).

As discussed, § 14(a) claims are subject to a heightened pleading standard under

the PSLRA, while a plaintiff asserting a claim for breach of fiduciary duty is required only to

set forth a "short and plain" statement of his claim, pursuant to Rule 8 of the Federal Rules

of Civil Procedure.  Nevertheless, the first of the above two allegations fails for one of the

reasons the Court dismissed the § 14(a) claim, specifically, plaintiff's failure to allege that

the assertedly nondisclosed information was not readily available in the public domain.

See, e.g., Vega v. Jones, Day, Reavis & Pogue, 121 Cal. App. 4th 282, 295 (2004) (noting,

in fraudulent concealment action, "the question in a nondisclosure case is whether the

defendant knows of material facts, and also knows that those facts are neither known nor readily accessible to the plaintiff"; further noting "the point of disclosing material information in a transaction is that it is not otherwise available to the other side").  As to the latter allegation, however, plaintiff has adequately alleged the nondisclosure of a material fact, specifically, that the price obtained from the Asset Sale was lower than it would have been if the Textainer Defendants had not required the purchaser to enter into a management agreement with Textainer Management.

Accordingly, the Court will grant the motion to dismiss plaintiff's claim for breach of the fiduciary duty of candor/full disclosure to the extent such claim is based on the Textainer Defendants' failure to disclose changes in market prices between July 2004 and January 2005, with leave to amend.  The Court will deny the motion to dismiss plaintiff's claim for breach of the fiduciary duty of candor/full disclosure to the extent such claim is based on the Textainer Defendants' failure to disclose that the price obtained from the Asset Sale was lower than it would have been if the Textainer Defendants had not required the purchaser to enter into a management agreement with Textainer Management.

### 4. Aiding and Abetting Liability:  RFH

RFH argues that the sole claim alleged against it is subject to dismissal for failure to state a claim.  Plaintiff alleges that RFH, as the purchaser of the assets, "knowingly aided and abetted the Textainer Defendants in their breach of their fiduciary duties to the Limited Partners by agreeing to the management contract provided to the Textainer Defendants and agreeing to the terms of the Asset Sale and seeking approval through the Proxy Statements."  (See Compl. ¶ 58.)  Plaintiff further alleges that "[g]iven RFH's involvement in the purchases, it is reasonable to infer that the Proxy Statements were approved by RFH prior to distribution to the Limited Partners."  (See id. ¶ 31.)

To state a prima facie case based on aiding and abetting a breach of fiduciary duty, plaintiff must allege that RFH: (1) knew the Textainer Defendants' conduct constituted a breach of fiduciary duty; and (2) gave "substantial assistance or encouragement" to the Textainer Defendants to accomplish the breach.  See Casey v. U.S. Bank Nat'l Ass'n, 127

1  Cal. App. 4th 1138, 1144 (2005).  Plaintiff's complaint does not sufficiently allege either of

2  the requisite elements.

3      Plaintiff's allegation that RFH "knowingly" aided and abetted the Textainer

4  Defendants, (see Compl. ¶ 58), is conclusory in nature and, as such, is insufficient to plead

5  the first requisite element.  See Holden, 978 F.2d at 1121 (holding court, in ruling on motion

6  to dismiss, need not accept as true conclusory allegations unsupported by the facts

7  alleged); see also Casey, 127 Cal. App. 4th at 1153 (holding "conclusory allegation" that

8  defendants "acted with knowledge of the primary wrongdoing" insufficient to plead actual

9  knowledge).  Plaintiff alleges no facts to support an inference that RFH had actual

10  knowledge of the alleged breach.

11      Plaintiff also fails to allege that RFH substantially assisted or encouraged the

12  Textainer Defendants in their alleged breach of their fiduciary duties.  Plaintiff's complaint

13  simply states that "it is reasonable to infer that the Proxy Statements were approved by

14  RFH."  (See Compl. ¶ 31.)  A failure to object to the content of the Proxy Statements,

15  however, does not constitute substantial assistance or encouragement.  See, e.g., Fiol v.

16  Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996) (holding "mere failure to act does not

17  constitute the giving of 'substantial assistance or encouragement' to the tortfeasor"); see

18  also Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 78 (1996) (noting aiding and

19  abetting "occurs when one helps another commit a prohibited act").  Moreover, even

20  assuming RFH expressly approved the content of the Proxy Statements, a fact that is not

21  directly alleged in the complaint, there is no allegation that such approval of the Proxy

22  Statements contributed in any way to the Textainer Defendants' distribution of the Proxy

23  Statements.  See, e.g., Restatement (2nd) Torts § 876 (noting encouragement or

24  assistance must be "substantial factor in causing the resulting tort"); see also Frame v.

25  PricewaterhouseCoopers LLP, 2005 WL 3149697 at *9 (Cal. App. Nov. 28, 2005) (finding

26  triable issue as to aiding and abetting where defendants "enable[d]" wrongdoers to commit

27  tort).  Plaintiff's complaint is devoid of any allegation as to how RFH's alleged approval of

28  the Proxy Statements assisted or encouraged the Textainer Defendants to breach their

1   fiduciary duties to the limited partners.

2      Accordingly, the Court finds plaintiff has failed to state a claim against RFH for aiding

3   and abetting any breach of fiduciary duty committed by the Textainer Defendants, and will

4   dismiss the claim with leave to amend.

5                                    **CONCLUSION**

6      For the reasons set forth above:

7      1.  The Textainer Defendants' motion to dismiss is hereby GRANTED IN PART and

8   DENIED IN PART as follows:

9         a.  The motion to dismiss plaintiff's § 14(a) claim is GRANTED and such claim

10   is DISMISSED with leave to amend.

11        b.  The motion to dismiss all claims asserted on behalf of the limited partners

12   of Textainer I and II is DENIED.

13        c.  The motion to dismiss plaintiff's § 20(a) claim is GRANTED and such claim

14   is DISMISSED with leave to amend.

15        d.  The motion to dismiss plaintiff's claims for breach of the fiduciary duties of

16   loyalty, care and candor/full disclosure, to the extent asserted against Maccarone,

17   Textainer Capital, and Textainer Holdings, is GRANTED and such claims are DISMISSED

18   with leave to amend.

19        e.  The motion to dismiss the claim for breach of the fiduciary duty of loyalty,

20   as asserted against the remainder of the Textainer Defendants, is DENIED.

21        f.  The motion to dismiss the claim for breach of the fiduciary duty of care, as

22   asserted against the remainder of the Textainer Defendants, is DENIED.

23        g.  The motion to dismiss the claim for breach of the fiduciary duty of

24   candor/full disclosure, as asserted against the remainder of the Textainer Defendants, is

25   GRANTED and such claim is DISMISSED with leave to amend to the extent such claim is

26   based on a failure to disclose changes in market prices between July 2004 and January

27   2005.  The motion to dismiss plaintiff's claim for breach of the fiduciary duty of full

28   disclosure, as asserted against the remainder of the Textainer Defendants, to the extent

such claim is based on a failure to disclose that the price obtained from the Asset Sale was lower than it would have been if the Textainer Defendants had not required the purchaser to enter into a management agreement with Textainer Management is DENIED.

2.  RFH's motion to dismiss the aiding and abetting claim, as asserted against RFH, is hereby GRANTED, and said claim is DISMISSED with leave to amend.

3.  Plaintiff may file an amended complaint no later than 20 days from the date of this order.

4.  In light of the above rulings, the Case Management Conference previously scheduled for December 16, 2005 is hereby CONTINUED to March 31, 2006 at 10:30 a.m. A Joint Case Management Statement shall be filed no later than March 24, 2006.

This order terminates Docket Nos. 125 and 126.

**IT IS SO ORDERED.**

Dated: December 12, 2005

_____
MAXINE M. CHESNEY
United States District Judge

27