**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: TEXTAINER PARTNERSHIP SECURITIES LITIGATION<br><br>_____<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br>_____/ | No. C-05-0969 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART TEXTAINER DEFENDANTS' MOTION TO DISMISS; DENYING RFH'S MOTION TO DISMISS; VACATING HEARING**<br><br>(Docket Nos. 153, 157) |

Before the Court are two separate motions to dismiss lead plaintiff Stephen L. Craig's Second Amended and Consolidated Class Action Complaint ("SAC" or "Second Amended Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to meet the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA").  The motions are filed, respectively, by: (1) defendants Textainer Equipment Management, Ltd. ("Textainer Equipment"), Textainer Financial Services Corporation ("Textainer Financial"), Textainer Capital Corporation ("Textainer Capital"), Textainer Limited ("Textainer Ltd."), Textainer Group Holdings, Ltd. ("Textainer Holdings"), and John A. Maccarone ("Maccarone") (collectively, "Textainer Defendants"); and (2) defendant RFH, Ltd. ("RFH").  Plaintiff has filed separate oppositions to the two motions; the Textainer Defendants and RFH have filed separate replies.  Having considered the

1   papers submitted in support of and in opposition to the motions, the Court finds the matters

2   appropriate for decision without oral argument, see Civil L.R. 7-1(b), VACATES the April

3   28, 2006 hearing, and rules as follows.

**BACKGROUND**

5       The instant action is a purported class action arising from the sale of the assets of

6   TCC Equipment Income Fund, L.P. ("Textainer I"), TCC Equipment Income Fund II, L.P.

7   ("Textainer II"), TCC Equipment Income Fund III, L.P. ("Textainer III"), TCC Equipment

8   Income Fund IV, L.P. ("Textainer IV"), TCC Equipment Income Fund V, L.P. ("Textainer

9   V"), TCC Equipment Income Fund VI, L.P. ("Textainer VI") (collectively "Textainer

10  Partnerships") to RFH ("Asset Sale").  The following background section is taken from the

11  allegations of the Second Amended Complaint.

12      Each Textainer Partnership owned a fleet of shipping containers, which they leased

13  to customers; the shipping containers and the leases thereof were the primary assets of the

14  Textainer Partnerships. (See SAC ¶¶ 1, 8, 22-24.)  Textainer Equipment was an associate

15  general partner of the Textainer Partnerships and was responsible for management of the

16  Textainer Partnerships' leasing operations. (See id. ¶ 9.)

17      Textainer Financial was a general partner of the Textainer Partnerships and was

18  responsible for overall management of the business of the Textainer Partnerships. (See

19  SAC ¶10.)  Textainer Capital owns Textainer Financial and has identified itself, in

20  correspondence to the limited partners, as the managing general partner of the Textainer

21  Partnerships. (See id. ¶ 11.)  Textainer Ltd. is an associate general partner of the

22  Textainer Partnerships. (See SAC ¶ 12.)  Textainer Holdings owns Textainer Equipment,

23  Textainer Financial, Textainer Capital, and Textainer Ltd. (See id. ¶ 13.)  Maccarone is

24  president, chief executive officer, and a director of Textainer Holdings, Textainer Financial,

25  Textainer Capital, and Textainer Ltd., as well as a director of Textainer Equipment. (See id.

26  ¶ 14.)

27      Textainer Holdings created an Investment Advisory Committee ("IAC") to advise the

28  general partners with respect to the operation and financial condition of the Textainer

1    Partnerships.  (See id. ¶ 26.)   In May 2004, the IAC decided to seek bids for the assets of

2    the Textainer Partnerships, and sent out information packets to eight potential bidders.

3    (See id. ¶ 29.)  Bids were subject to the condition that the purchaser agree to accept a

4    management contract with Textainer Equipment ("management contract requirement").

5    (See id.)  Plaintiff alleges the management contract requirement eliminated any potential

6    bidder who did not want or need Textainer Equipment to manage the assets, and had the

7    effect of limiting the price that potential bidders were willing to pay for the assets.  (See id. ¶

8    29.)

9          The highest bid was a joint bid submitted in June 2004 by two entities, Hakman

10   Capital Corporation ("Hakman") and Fortis Bank, who subsequently were joined by a third

11   entity, P&R, to form defendant RFH.  (See id. ¶¶ 30, 34.)  According to plaintiff, "[t]he price

12   RFH agreed to pay was effective as of July 1, 2004 and was adjusted downwards as of

13   January 1, 2005 purportedly because of a reduction in the number of containers owned by

14   the Partnerships and the value of each container to be purchased by type and year of

15   manufacture."  (See id. ¶ 30.)  On November 30, 2004, each of the Textainer Partnerships

16   entered into an asset sale agreement with RFH, subject to approval by the "affirmative vote

17   of more than 50% of the limited partnership units in each of the Partnerships."  (See id.

18   ¶ 48.)

19         To secure the approval of the limited partners, the Textainer Defendants

20   disseminated proxy statements, which were identical in all relevant aspects, to the limited

21   partners of each of the six partnerships.  (See id. ¶ 49.)  Included with the proxy statements

22   was a cover letter, dated January 21, 2005, written by Maccarone ("Maccarone letter"),

23   which stated that the general partners believed the Asset Sale was "fair to and in the best

24   interests of the limited partners."  (See id. ¶ 53.)  On March 21, 2005, the limited partners of

25   each of the Textainer Partnerships voted to approve the Asset Sale, which was completed

26   on April 18, 2005.  (See id. ¶ 69.)

27         Plaintiff contends the proxy statements were materially false and misleading

28   because (1) they failed to disclose that, between the date the Textainer Defendants and

3

1  RFH agreed on a price for the Asset Sale and the date of the proxy statements, the price of

2  shipping containers had increased by approximately 18-20%, and (2) they failed to disclose

3  that the assets were "being sold at less than the highest price" by reason of the

4  management contract requirement.  (See id. ¶ 52.)  Plaintiff alleges the Maccarone letter

5  was materially false and misleading because the assertedly "fair" deal actually was at a

6  price below prevailing market values and not in the best interests of the limited partners.

7  (See id. ¶ 54.)

8      Plaintiff asserts federal claims for violation of §§ 14(a) and 20(a) of the Securities

9  Exchange Act of 1934 ("Exchange Act"), and state law claims for breach of fiduciary duty

10  and aiding and abetting such breach.  (See id. ¶¶ 77-99.)  The instant putative class action

11  is asserted on behalf of "all persons who were limited partners of the Textainer

12  Partnerships on the date the Proxy Statements were filed with the SEC and disseminated

13  to the Limited Partners."  (See id. ¶ 70.)

14                                    **LEGAL STANDARD**

15      A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

16  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

17  entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be

18  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699

20  (9th Cir. 1990).

21      Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

22  material beyond the pleadings.  See Hal Roach Studios, Inc. v. Richard Feiner And Co.,

23  Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Material that is properly submitted as part

24  of the complaint, however, may be considered.  See id.  Documents whose contents are

25  alleged in the complaint, and whose authenticity no party questions, but which are not

26  physically attached to the pleading, also may be considered.  See Branch v. Tunnell, 14

27  F.3d 449, 454 (9th Cir. 1994).  In addition, the Court may consider any document "the

28  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

4

1   relies," regardless of whether the document is referred to in the complaint.  See Parrino v.

2   FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that

3   are subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d

4   1279, 1282 (9th Cir. 1986).  In analyzing a motion to dismiss, the Court must accept as true

5   all material allegations in the complaint, and construe them in the light most favorable to the

6   nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

7   The Court may disregard factual allegations if such allegations are contradicted by the facts

8   established by reference to exhibits attached to the complaint.  See Durning v. First Boston

9   Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  Conclusory allegations, unsupported by the

10  facts alleged, need not be accepted as true.  See Holden v. Hagopian, 978 F.2d 1115,

11  1121 (9th Cir. 1992).

12                                    **DISCUSSION**

13         **A.  Section 14(a) Claim**

14         Plaintiff's claim for violation of § 14(a) of the Exchange Act, and Rule 14a-9

15  promulgated thereunder, is asserted against the Textainer Defendants and Textainer

16  Partnerships only.  (See SAC ¶ 78.)  The Court previously dismissed said claim, as alleged

17  in the Consolidated and Amended Class Action Complaint ("First Amended Complaint"),

18  with leave to amend.  (See Order filed December 12, 2005 ("December 12 Order") at 5-16.)

19  The Textainer Defendants again move to dismiss said claim, both for failure to state a claim

20  and for failure to comply with the pleading requirements of the Private Securities Litigation

21  Reform Act ("PSLRA").[1]

22         Section 14(a) makes it unlawful for any person to solicit, in violation of regulations

23  promulgated by the SEC, "any proxy or consent or authorization in respect of any security

24  . . . registered pursuant to section 78l."  See 15 U.S.C. § 78n(a).  SEC Rule 14a-9 provides:

25  _____

26         [1] The PSLRA sets forth a heightened pleading standard for claims based on
    misleading statements and omissions; the complaint must "specify each statement alleged
    to have been misleading, the reason or reasons why the statement is misleading, and, if an
27  allegation regarding the statement or omission is made on information and belief, the
    complaint shall state with particularity all facts on which that belief is formed."  See 15
28  U.S.C. § 78u-4(b)(1).

1  "No solicitation subject to this regulation shall be made by means of any proxy statement . .

2  . containing any statement which, at the time and in light of the circumstances under which

3  it is made, is false or misleading with respect to any material fact, or which omits to state

4  any material fact necessary in order to make the statements therein not false or

5  misleading."  See 17 C.F.R. § 240.14a-9(a).  The United States Supreme Court has held

6  that § 14(a) "was intended to promote the free exercise of the voting rights of stockholders

7  by ensuring that proxies would be solicited with explanation to the stockholder of the real

8  nature of the questions for which authority to cast his vote is sought."  See TSC Industries,

9  Inc. v. Northway, Inc., 426 U.S. 438, 444 (1976) (internal quotations and citations omitted).

10  Section 14(a) thus acts to "ensure disclosures by corporate management in order to enable

11  the shareholders to make an informed choice." See id. at 448.

12        Plaintiff alleges that the following representations in the proxy statements were

13  materially misleading in violation of § 14(a) and Rule 14a-9:

14        •     Market conditions at historically high levels have increased the
     attractiveness of the container fleet to prospective buyers.

15

16        •     Selling now avoids having to liquidate assets under time constraints
     and uncertain market conditions in future years due to expiration of
     normal lives of the Textainer Partnerships.

17

18        •     Selling now eliminates the risk and uncertainty of possible future
     downturns in market conditions for leased and used containers.

19  (See SAC ¶ 51 (quoting Proxy Statements at 4); see also Textainer Defendants' Request

20  for Judicial Notice, Ex. A (Proxy Statement) at 4.)  Plaintiff further alleges that the following

21  statement in the Maccarone letter was materially false and misleading in violation of § 14(a)

22  and Rule 14a-9: "The Asset Sale will provide you with the opportunity to liquidate your

23  investment in the Partnership[s] for cash at a price and on terms that the general partners

24  believe are fair to and in the best interests of the limited partners of the Partnership[s]."

25  (See SAC ¶ 53; see also Textainer Defendants' Request for Judicial Notice, Ex. A

26  (Maccarone Letter) at 2.)

27                  **1.  Failure to Disclose Alleged Increase in Market Price**

28        The Court, in its December 12 Order, dismissed plaintiff's § 14(a) claim with leave to

6

1  amend, to the extent such claim was based on the proxy statements' alleged failure to

2  disclose that the price of shipping containers had increased by 18-20% since the date the

3  Textainer Defendants and RFH agreed on a price for the Asset Sale.  (See December 12

4  Order at 9-12.)  In light of the proxy statements' disclosures with respect to the market for

5  containers in 2004, the Court found plaintiff had not alleged, with the particularity required

6  by the PSLRA, that the Textainer Defendants' omission of the precise degree of increase in

7  the price of containers caused the proxy statements to be materially misleading.  (See id. at

8  10.)  The Court particularly noted that plaintiff had failed to allege with the requisite

9  particularity (1) that market prices for containers were not readily available to the public; (2)

10  the source of plaintiff's information as to an 18-20% increase in the price of containers

11  during the relevant time period, and (3) that the alleged price increase applied to the

12  particular type of containers owned by the Textainer Partnerships.  (See id. at 10-11.)

### a.      Public Availability of Container Prices

14  Plaintiff now alleges there is no centralized market for buying and selling containers,

15  and that the only publication with pricing information is a subscription-only quarterly trade

16  magazine, Containerisation International, which costs more than $500 per year.  (See SAC

17  ¶ 43.)  Plaintiff further alleges that the information in Containerisation International relates

18  only to new containers and "requires industry knowledge to gauge its impact on the current

19  price for existing containers."  (See id.)  Consequently, according to plaintiff, "[m]ost

20  investors, even those investing in limited partnerships concerning shipping containers,

21  would not have access to container prices, even if they were somewhat sophisticated

22  investors."  (See id.)  The Court finds plaintiff has adequately amended the complaint to

23  allege that the prices of shipping containers are not readily available to the public.

### b.      Source of Information as to 18-20% Price Increase

25  With respect to the source of his information as to the asserted 18-20% increase in

26  the price of containers, plaintiff now alleges that "based on a review of industry data, an

27  experienced industry consultant estimated that 20-foot containers[ ] increased in value from

28  July 2004 to January 2005 by 18% (from about $1,950 to about $2,300) and 40-foot

7

1  containers increased 20% (from $3,300 to $3,950)." (See SAC ¶ 35.)  Plaintiff further

2  alleges that "[b]ased on the information in the Proxy Statements and knowledge of the

3  industry, an experienced consultant believes that RFH paid at least 18-20% below market

4  price for the Partnerships' assets." (See SAC ¶ 42.)   Such amended allegations remain

5  too conclusory to satisfy the heightened pleading standard of the PLSRA.

6          As noted, where the allegations of misleading statements are based on information

7  and belief,[2] the PSLRA requires that the complaint "state with particularity all facts on which

8  that belief is formed."  See 15 U.S.C. § 78u-4(b)(1).  The Ninth Circuit has held the above-

9  referenced section of the PLSRA requires the plaintiff to "provide all the facts forming the

10  basis for [that] belief in great detail" and to "provide a list of all relevant circumstances in

11  great detail." See In re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970, 983-84

12  (9th Cir. 1999).  Additionally, the PSLRA requires that the complaint reveal the "sources of

13  [the plaintiff's] information," "corroborating details," and facts demonstrating the reliability of

14  the plaintiff's assertions.  See id. at 985.

15          Plaintiff's conclusory allegations as to an unspecified analysis performed by an

16  unnamed or otherwise identified consultant, and which fail to include any information about

17  the consultant's qualifications, how the analysis was performed, or the data upon which the

18  consultant relied, are inadequate under the PSLRA's heightened pleading standard.  See

19  id. (rejecting, as inadequately pleaded, boilerplate assertion that allegations were

20  supported by review of "SEC filings, securities analysts reports and advisories about the

21  Company, press releases issued by the Company, media reports about the Company and

22  discussions with consultants"); see also In re Daou Systems, Inc. Securities Litigation, 411

23  F.3d 1006, 1015 (9th Cir. 2005) (holding confidential sources must "be described with

24  sufficient particularity to support the probability that a person in the position occupied by the

25

26          [2] In the First Amended Complaint, plaintiff alleged that the complaint is based "upon
27  personal knowledge as to himself and his own acts and upon information and belief as to
   all other matters based upon the investigation made by and through his attorneys[.]" (See
28  FAC at 1.)  Plaintiff's deletion of such language from the Second Amended Complaint is of
   no import.

8

source would possess the information alleged"); <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp.</u>, 380 F.3d 1226, 1233 (9th Cir. 2004) (finding reliance on opinion of expert adequately pleaded where complaint alleged expert's background, calculations, content of discussion between expert and employee of defendant, and content of corroborating documents).

Accordingly, the Court finds plaintiff has not adequately amended the complaint to plead with the requisite particularity the source of his allegation as to an 18-20% increase in the price of containers between July 2004 and January 2005, and, consequently, plaintiff's § 14(a) claim, to the extent it is based on such allegation, is subject to dismissal.

### c. Application of Alleged Price Increase to Particular Type of Containers Owned by Textainer Partnerships.

Because plaintiff's failure to adequately plead the source of his allegation of an undisclosed 18-20% increase in the price of containers during the relevant time period requires dismissal of his § 14(a) claim, the Court does not reach defendants' arguments as to the adequacy of plaintiff's amended allegations as to whether such price increase applies to the particular type of containers owned by the Textainer Partnerships.

### d. Conclusion

For the reasons set forth above, plaintiff's § 14(a) claim, to the extent such claim is based on a failure to disclose the alleged increase in the market price of containers between July 2004 and January 2005, will be DISMISSED with leave to amend.

### 2. Failure to Disclose Sale Price Was Lower Due to Management Contract Requirement

In the December 12 Order, the Court dismissed plaintiff's § 14(a) claim with leave to amend, to the extent such claim was based on the allegation that the Textainer Defendants failed to inform the limited partners, in the proxy statements, that the sale price was adversely affected by the management contract requirement. (<u>See</u> December 12 Order at 12-14.) The Court noted that the proxy statements disclosed not only that acceptance of a management contract with Textainer Equipment was one of the conditions to bidding as well as a condition to the Asset Sale Agreement, but also disclosed the principal terms of

1  that management contract.  (See December 12 Order at 12-13.)  The Court further found

2  plaintiff had not adequately alleged why such disclosure was materially misleading,

3  because, based on the information disclosed in the proxy statement, any Textainer limited

4  partner could infer that the management contract requirement might have affected the

5  ultimate bid price.  (See id. at 13.)  As the Court noted, plaintiff did not "allege, for example,

6  that the Textainer Defendants failed to disclose they received and rejected higher bids

7  because the bidder would not accept a management contract with Textainer Equipment, or

8  that the Textainer Defendants were aware that a particular bidder reduced the amount of its

9  bid because of the requirement' that it enter into a contract with Textainer Equipment.  (See

10  id. at 14.)

11      Plaintiff's amendments to the complaint fail to cure the deficiency noted by the Court

12  in the December 12 Order.  Although plaintiff now alleges the bidding process was

13  "carefully orchestrat[ed]" to exclude "other container leasing companies," and that container

14  leasing companies were "likely" to pay the highest price because they "would be able to

15  take advantage of economies of scale," (see SAC ¶¶ 52, 63), plaintiff fails to allege any

16  facts suggesting that any container leasing company would have bid more than RFH, such

17  as, for example, alleging that a comparable asset sale in which container leasing

18  companies were permitted to bid generated a higher price than RFH's bid in the instant

19  case.  Similarly, although plaintiff alleges the Textainer Defendants "failed to retain

20  investment bankers or other professionals to identify all potential purchasers and analyze

21  which were likely to make the highest bids," (see SAC ¶¶ 3, 62), plaintiff again fails to

22  allege facts suggesting there was another bidder who would have bid more than RFH if it

23  had been invited to bid on the Textainer assets.

24      Moreover, plaintiff's new allegation that "[a]ccording to an industry consultant, the

25  failure to allow a purchaser to switch managers would eliminate potential bidders and

26  depress the amounts of the bids that were made," (see SAC ¶ 56), is inadequately pleaded

27  under the PLSRA's heightened pleading standard because, as noted above, plaintiff has

28  not pleaded sufficient facts as to the consultant's qualifications, how the consultant's

1   analysis was performed, and the data upon which the consultant relied.

2         Finally, although plaintiff has added allegations that the Textainer Defendants may

3   have imposed the management contract requirement to ensure that the Textainer

4   Defendants would have access to sufficient containers to comply with a five-year contract

5   with the United States Army, (see SAC ¶ 56-61), such allegations go only to defendants'

6   possible reasons for imposing the requirement, not to the issue of whether the imposition of

7   the requirement actually depressed the sale price of the assets.

8         Accordingly, plaintiff's § 14(a) claim, to the extent such claim is based on an alleged

9   failure to inform the limited partners, in the proxy statements, that the sale price was lower

10  than it otherwise would have been as a result of the management contract requirement, will

11  be DISMISSED with leave to amend.[3]

12                     **3.  Statement as to Fairness of Asset Sale**

13        In the December 12 Order, the Court dismissed, with leave to amend, plaintiff's

14  § 14(a) claim, to the extent such claim is based on allegations that the Maccarone Letter

15  was materially false or misleading because the Asset Sale was priced below prevailing

16  market value and therefore was not in the best interests of the limited partners.  (See

17  December 12 Order at 14-15.)  As noted, plaintiff alleges the following statement in the

18  Maccarone Letter was materially false and misleading: "The Asset Sale will provide you

19  with the opportunity to liquidate your investment in the Partnership[s] for cash at a price

20  and on terms that the general partners believe are fair to and in the best interests of the

21  limited partners of the Partnership[s]."  (See SAC ¶ 53; see also Textainer Defendants'

22  Request for Judicial Notice, Ex. A (Maccarone Letter) at 2.)  In the December 12 Order, the

23  Court noted that such statement is an opinion, and that a defendant may be liable for

24  statements of opinion only if (1) the speaker did not actually hold the opinion and (2) the

25

26        [3] In light of the Court's finding that plaintiff has not adequately pleaded the proxy
    statements were materially misleading, the Court does not reach defendants' additional
27  argument that plaintiff has not pleaded with the requisite particularity "that Textainer was
    negligent in not disclosing either the alleged increase in container prices or the supposed
28  defects in its bidding process."  (See Textainer Defendants' Motion at 18.)

1   opinion was objectively false or misleading.  (See id. at 15 (citations omitted)).  The Court

2   dismissed the claim because plaintiff failed to allege that the Textainer Defendants did not

3   actually hold the opinion stated in the Maccarone Letter, and because plaintiff had failed to

4   adequately allege objective falsity.  (See id. at 15.)

5         Plaintiff now alleges that Maccarone "would have known the current container

6   prices" because he has been involved in the container leasing industry since at least 1979,

7   and, as a top-ranking officer of various Textainer entities, he was required to be well

8   informed regarding the container market.  (See SAC ¶ 45.)  Additionally, plaintiff alleges

9   that because Textainer purchased 79,000 containers in November 2004, Maccarone

10   cannot claim ignorance of the "true value" of containers.  (See id. ¶ 47.)  Finally, plaintiff

11   alleges that "given Maccarone and the Textainer Defendants' years of experience and

12   knowledge of the industry, they were aware that [be]cause of the dramatic increases in

13   container prices, the requirement that Textainer Equipment continue to manage the fleet

14   and the decision to omit container leasing companies from the bidding, they were not

15   obtaining a transaction that was in the Limited Partners' best interests[.]" (See id. ¶ 54.)

16         For the reasons set forth above, however, plaintiff has not alleged with particularity

17   that there actually were dramatic increases in the price of the relevant containers in the

18   second half of 2004, or that the management contract requirement or the decision to

19   exclude other container leasing companies from the bidding adversely affected the price

20   obtained in the Asset Sale.  Accordingly, plaintiff's § 14(a) claim, to the extent such claim is

21   based on statements of opinion in the Maccarone letter, will be DISMISSED with leave to

22   amend.

23   **B.  Section 20 Claim**

24         Plaintiff alleges the Textainer Defendants are additionally liable for violating § 20(a)

25   of the Exchange Act.  (See SAC ¶¶ 63-65.)  Section 20(a) provides that "every person who,

26   directly or indirectly, controls any person liable under any provision of [the Exchange Act] or

27   of any rule or regulation thereunder shall also be liable jointly and severally with and to the

28   same extent as such controlled person to any person to whom such controlled person is

1  liable."  See 15 U.S.C. § 78t(a).  "In order to prove a prima facie case under § 20(a), a

2  plaintiff must prove: (1) a primary violation of federal securities laws . . . and (2) that the

3  defendant exercised actual power or control over the primary violator."  Howard v. Everex

4  Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Because, as discussed above, plaintiff

5  has failed to allege "an actionable independent underlying violation of the [Exchange] Act,"

6  plaintiff has not stated a claim for violation of § 20(a).  See In re VeriFone Securities

7  Litigation, 11 F.3d 865, 872 (9th Cir. 1993).

8         Accordingly, plaintiff's § 20(a) claim will be DISMISSED with leave to amend.

9         **C. State Law Claims for Breach of Fiduciary Duty**

10              **1. As Asserted Against Maccarone and Textainer Holdings**

11        In the December 12 Order, the Court dismissed, with leave to amend, plaintiff's state

12  law claims for breach of fiduciary duty, as asserted against Maccarone, Textainer Capital,

13  and Textainer Holdings, because plaintiff did not allege said defendants were partners of

14  the Textainer Partnerships or that they exercised a "high degree of control" over the

15  Textainer Partnerships.  (See December 12 Order at 17-19.)  Maccarone and Textainer

16  Holdings (but not Textainer Capital) move to dismiss the claim for breach of fiduciary duty

17  asserted against them, on the ground plaintiff's amendments to the complaint fail to cure

18  the deficiencies identified by the Court.

19        As the Court explained in the December 12 Order, non-partners, under California

20  law, may owe fiduciary duties to the partners of a partnership as a result of the non-

21  partners' relationship with a partner.  (See id.)  For example, the Ninth Circuit Bankruptcy

22  Appellate Panel, interpreting California law, has held the general partner of a general

23  partner of a limited partnership to be a fiduciary of the limited partnership where such

24  defendant exercised a "high degree of control" over the limited partnership.  See In re

25  Abrams, 229 B.R. 784, 791-92 (9th Cir. BAP 1999).  On the other hand, the district court in

26  In re Real Estate Associates Ltd. Partnership Litigation, 223 F. Supp. 2d 1109, 1133-34

27  (C.D. Cal. 2002) held certain officers and directors of a managing general partner did not

28  owe a fiduciary duty to the limited partners because plaintiffs therein had failed to set forth

1    facts sufficient to raise a triable issue as to whether such officers and directors exercised

2    the requisite high degree of control over the managing general partner, within the meaning

3    of <u>Abrams</u>, and, accordingly, found it inappropriate to "pierce the partnership veil."  <u>See</u> <u>id</u>.

4           Plaintiff does not allege that Maccarone or Textainer Holdings are partners in any of

5    the Textainer Partnerships.[4]  According to plaintiff, Textainer Equipment, Textainer

6    Financial, Textainer Capital, and Textainer Ltd. are general partners of the Textainer

7    Partnerships.  (<u>See</u> SAC ¶¶ 9-12.)  Plaintiff alleges Textainer Holdings "owns," and

8    Maccarone "operate[s]," all four of the above-referenced defendants.  (<u>See</u> <u>id</u>. ¶¶ 1, 13.)

9    Plaintiff further alleges Maccarone is president, chief executive officer, and a director of

10   Textainer Holdings, Textainer Financial, Textainer Capital, and Textainer Ltd., and a

11   director and former president and chief executive officer of Textainer Equipment.  (<u>See</u> <u>id</u>. ¶

12   14.)  In addition, plaintiff alleges Textainer Holdings "controlled the bidding process for the

13   Partnerships."  (<u>See</u> <u>id</u>. ¶ 91.)

14          As the Court held in the December 12 Order, plaintiff's state law claim for breach of

15   fiduciary duty is not governed by a heightened pleading standard, but, rather, must satisfy

16   only the notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure.

17   (<u>See</u> December 12 Order at 17.)  Nonetheless, plaintiff has not adequately alleged that

18   Textainer Holdings and Maccarone exercise the requisite degree of control over the

19   Textainer Partnerships to be held fiduciaries of the limited partners of said partnerships

20   within the meaning of <u>Abrams</u>.  In <u>Abrams</u>, one of the issues was whether the debtor,

21   Abrams, was a fiduciary of a limited partnership, Sea Palms; the sole general partner of

22   Sea Palms was ABWA Associates ("ABWA"), a limited partnership of which Abrams and

23   his wife were the sole general partners.  <u>See</u> <u>Abrams</u>, 229 B.R. at 784.  The Bankruptcy

24   Appellate Panel held Abrams was a fiduciary of the limited partners of Sea Palms because

25   he and his wife were "the only individuals with managerial responsibility and control over

26

27          [4] By contrast, plaintiff now alleges Textainer Capital, in correspondence to the limited
     partners, "identifies itself as the managing general partner of the Textainer Partnerships."
28   (<u>See</u> SAC ¶ 11.)

1   the Sea Palms project." See id. at 792.  Here, by contrast, there is no allegation that

2   Maccarone had complete control over Textainer Holdings, Textainer Equipment, Textainer

3   Financial, Textainer Capital, and Textainer Ltd., or that Textainer Holdings had complete

4   control over the acts of Textainer Equipment, Textainer Financial, Textainer Capital, and

5   Textainer Ltd. in their capacity as general partners of the Textainer Partnerships.

6        Accordingly, plaintiff's claim for breach of fiduciary duty, as asserted against

7   Maccarone and Textainer Holdings, will be DISMISSED with leave to amend.

8                    **2.  As Asserted Against Remaining Defendants**

9        The Textainer Defendants do not move to dismiss, as inadequately pleaded, the

10  breach of fiduciary claim as asserted against Textainer Equipment, Textainer Financial,

11  Textainer Capital, and Textainer Ltd.  Instead, the Textainer Defendants ask the Court to

12  decline to exercise supplemental jurisdiction over such claims if the Court dismisses the

13  federal claims.  Although the Court again will dismiss the federal claims, it will do so with

14  leave to amend.  Because plaintiff may be able to cure the deficiencies the Court has

15  identified in the federal claims, the Court finds it premature, at this time, to decline to

16  exercise supplemental jurisdiction over the state law claims.

17           **D.     State Law Claims for Aiding and Abetting Breach of Fiduciary Duty As
                      Asserted Against RFH**

18

19       In the December 12 Order, the Court dismissed plaintiff's claim against RFH for

20  aiding and abetting breach of fiduciary duty.  (See December 12 Order at 24-26.)  RFH

21  again moves to dismiss said claim, as asserted against RFH, for failure to state a claim.

22       To state a prima facie case based on aiding and abetting a breach of fiduciary duty,

23  plaintiff must allege that RFH: (1) knew the Textainer Defendants' conduct constituted a

24  breach of fiduciary duty; and (2) gave "substantial assistance or encouragement" to the

25  Textainer Defendants to accomplish the breach.  See Casey v. U.S. Bank Nat'l Ass'n, 127

26  Cal. App. 4th 1138, 1144 (2005).[5]  In the December 12 Order, the Court found plaintiff's

27       [5] Contrary to RFH's argument, there is no requirement that RFH's conduct be
28  independently tortious.  Although one California case so holds, see Coffman v. Kennedy,
    74 Cal. App. 3d 28, 32 (1977), later cases are in agreement that liability for aiding and

                                              15

1  allegation that RFH "knowingly" aided and abetted the Textainer Defendants was

2  conclusory and, consequently, insufficient to plead the first requisite element.  (See

3  December 12 Order at 25.)  The Court further found plaintiff's allegation that "it is

4  reasonable to infer that the Proxy Statements were approved by RFH" failed to adequately

5  allege that RFH gave the requisite assistance or encouragement to the Textainer

6  Defendants.  (See id. at 25-26.)

7       Plaintiff now alleges that RFH "cooperated with the Textainer Defendants in the

8  preparation of proxy solicitation materials" and that RFH "was fully knowledgeable about

9  the Proxy Statements prior to distribution."  (See SAC ¶¶ 32, 49, 68.)  Plaintiff further

10  alleges that Hakman is "one of the entities that comprises RFH," (see SAC ¶ 66), and that

11  "based on Hakman's experience and knowledge of the industry, and its review and

12  approval of the Proxy Statements, RFH undoubtedly knew that the Partnerships were being

13  sold for below market price."  (See id. ¶ 67.)  In addition, plaintiffs alleges:

14       Defendant RFH knowingly aided and abetted the Textainer Defendants in
         their breach of their fiduciary duties to the Limited Partners.  It agreed to the
15       terms of the Asset Sale, including the requirement that Textainer [Equipment]
         be retained to manage the containers following the transaction.  RFH did so
16       despite its knowledge that the price being paid was below the fair market
         price.  RFH also knew that the Textainer Defendants structured the deal in a
17       way that put their interests before the interests of the Limited Partners.
         Hakman and Fortis Bank had vast experience in the container leasing
18       industry and would have been aware of the substantial price increases.  To
         facilitate approval of the Asset Sale, RFH helped prepare and review
19       solicitation materials, thereby aiding and abetting the Textainer Defendants'
         breach of fiduciary duty.
20
   (See SAC ¶ 92.)
21
        Such allegations are sufficient to allege RFH knew the Textainer Defendants'
22
   conduct constituted a breach of fiduciary duty, and gave "substantial assistance or
23
   encouragement" to the Textainer Defendants to accomplish the breach.  See Casey, 127
24

25

26  abetting may exist even where the defendant's conduct does not independently breach a
    duty to the plaintiff.  See, e.g., Casey, 127 Cal. App. 4th at 1144 (citing cases); see also id.
27  at 1145 ("[E]ven 'ordinary business transactions' a bank performs for a customer can
    satisfy the substantial assistance element of an aiding and abetting claim if the bank
28  actually knew those transactions were assisting the customer in committing a specific
    tort.").

16

1 Cal. App. 4th at 1144.

2      Accordingly, RFH's motion to dismiss will be DENIED.

3 **CONCLUSION**

4      For the reasons set forth above,

5      1. The Textainer Defendants' motion to dismiss is hereby GRANTED IN PART and

6 DENIED IN PART as follows:

7         a. The motion to dismiss plaintiff's § 14(a) claim is GRANTED and such claim

8 is DISMISSED with leave to amend.

9         b. The motion to dismiss plaintiff's § 20(a) claim is GRANTED and such claim

10 is DISMISSED with leave to amend.

11         c. The motion to dismiss plaintiff's claims for breach of fiduciary duty, to the

12 extent such claims are asserted against Textainer Holdings and Maccarone, is GRANTED

13 and such claims are DISMISSED with leave to amend.

14         d. The motion to dismiss the claims for breach of fiduciary duty, as asserted

15 against the remainder of the Textainer Defendants, is DENIED.

16      2. RFH's motion to dismiss the aiding and abetting claim, as asserted against RFH,

17 is DENIED. RFH shall file an answer within ten days of the date of this order.

18      3. Plaintiff may file an amended complaint no later than 20 days from the date of

19 this order.

20      This order terminates Docket Nos. 153 and 157.

21      **IT IS SO ORDERED.**

22 Dated: May 15, 2006

_____
MAXINE M. CHESNEY
United States District Judge