IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: TEXTAINER PARTNERSHIP SECURITIES LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br>_____/ | No. C-05-0969 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART TEXTAINER DEFENDANTS' MOTION TO DISMISS; VACATING HEARING**<br><br>(Docket No. 179) |

Before the Court is the Textainer Defendants'[1] motion, filed June 26, 2006, to dismiss the claims asserted against them in lead plaintiff Stephen L. Craig's Third Amended and Consolidated Class Action Complaint ("TAC" or "Third Amended Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to meet the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA"). Plaintiff has filed opposition to the motion; the Textainer Defendants have filed a reply. Having considered the papers submitted in support of and in opposition to the motions, the Court finds the matters appropriate for decision without oral argument, see

---

[1] The Textainer Defendants are Textainer Equipment Management, Ltd. ("Textainer Equipment"), Textainer Financial Services Corporation ("Textainer Financial"), Textainer Capital Corporation ("Textainer Capital"), Textainer Limited ("Textainer Ltd."), Textainer Group Holdings, Ltd. ("Textainer Holdings"), and John A. Maccarone ("Maccarone").

Civil L.R. 7-1(b), VACATES the August 4, 2006 hearing, and rules as follows.

## BACKGROUND

The instant action is a purported class action arising from the sale of the assets ("Asset Sale") of TCC Equipment Income Fund, L.P. ("Textainer I"), TCC Equipment Income Fund II, L.P. ("Textainer II"), TCC Equipment Income Fund III, L.P. ("Textainer III"), TCC Equipment Income Fund IV, L.P. ("Textainer IV"), TCC Equipment Income Fund V, L.P. ("Textainer V"), TCC Equipment Income Fund VI, L.P. ("Textainer VI") (collectively "Textainer Partnerships") to defendant RFH, Ltd. ("RFH"). The following background section is taken from the allegations of the Third Amended Complaint.

Each Textainer Partnership owned a fleet of shipping containers, which they leased to customers; the shipping containers and the leases thereof were the primary assets of the Textainer Partnerships. (See TAC ¶¶ 1, 8, 22-24.) Textainer Equipment was an associate general partner of the Textainer Partnerships and was responsible for management of the Textainer Partnerships' leasing operations. (See id. ¶ 9.)

Textainer Financial was a general partner of the Textainer Partnerships and was responsible for overall management of the business of the Textainer Partnerships. (See id. ¶10.) Textainer Capital owns Textainer Financial and has identified itself, in correspondence to the limited partners, as the managing general partner of the Textainer Partnerships. (See id. ¶ 11.) Textainer Ltd. is an associate general partner of the Textainer Partnerships. (See id. ¶ 12.) Textainer Holdings owns Textainer Equipment, Textainer Financial, Textainer Capital, and Textainer Ltd. (See id. ¶ 13.) Maccarone is president, chief executive officer, and a director of Textainer Holdings, Textainer Financial, Textainer Capital, and Textainer Ltd., as well as a director of Textainer Equipment. (See id. ¶ 14.)

Textainer Holdings created an Investment Advisory Committee ("IAC") to advise the general partners with respect to the operation and financial condition of the Textainer Partnerships. (See id. ¶ 26.) In May 2004, the IAC decided to seek bids for the assets of the Textainer Partnerships, and sent out information packets to eight potential bidders.

(See id. ¶ 29.) Bids were subject to the condition that the purchaser agree to accept a management contract with Textainer Equipment ("management contract requirement"). (See id.) Plaintiff alleges the management contract requirement eliminated any potential bidder who did not want or need Textainer Equipment to manage the assets, and had the effect of limiting the price that potential bidders were willing to pay for the assets. (See id. ¶ 29.)

The highest bid was a joint bid submitted in June 2004 by two entities, Hakman Capital Corporation ("Hakman") and Fortis Bank (Nederland) N.V. ("Fortis Bank"), who subsequently were joined by a third entity, P&R Equipment and Finance Corporation ("P&R"), to form defendant RFH. (See id. ¶¶ 16, 30, 34.) According to plaintiff, "[t]he price RFH agreed to pay was effective as of July 1, 2004 and was adjusted downwards as of January 1, 2005 purportedly because of a reduction in the number of containers owned by the Partnerships and the value of each container to be purchased by type and year of manufacture." (See id. ¶ 30.) On November 30, 2004, each of the Textainer Partnerships entered into an asset sale agreement with RFH, subject to approval by the "affirmative vote of more than 50% of the limited partnership units in each of the Partnerships." (See id. ¶ 59.)

To secure the approval of the limited partners, the Textainer Defendants disseminated proxy statements, which were substantially identical, to the limited partners of each of the six partnerships. (See id. ¶ 60.) Included with the proxy statements was a cover letter, dated January 21, 2005, written by Maccarone ("Maccarone letter"), which stated that the general partners believed the Asset Sale was "fair to and in the best interests of the limited partners." (See id. ¶ 64.) On March 21, 2005, the limited partners of each of the Textainer Partnerships voted to approve the Asset Sale, which was completed on April 18, 2005. (See id. ¶ 85.)

Plaintiff contends the proxy statements were materially false and misleading because (1) they failed to disclose that, between the date the Textainer Defendants and RFH agreed on a price for the Asset Sale and the date of the proxy statements, the price of

shipping containers had increased by approximately 18-20%, and (2) they failed to disclose that the assets were "being sold at less than the highest price" by reason of the management contract requirement. (See id. ¶ 63.) Plaintiff alleges the Maccarone letter was materially false and misleading because the assertedly "fair" deal actually was at a price below prevailing market values and not in the best interests of the limited partners. (See id. ¶ 65.)

Plaintiff asserts federal claims for violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and state law claims for breach of fiduciary duty and aiding and abetting such breach. (See id. ¶¶ 93-113.) The instant putative class action is asserted on behalf of "all persons who were limited partners of the Textainer Partnerships on the date the Proxy Statements were filed with the SEC and disseminated to the Limited Partners." (See id. ¶ 86.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v.

FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

**A.  Section 14(a) Claim**

The Court previously dismissed plaintiff's claim for violation of § 14(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder, as alleged in the Second Consolidated and Amended Class Action Complaint ("Second Amended Complaint"), with leave to amend. The Textainer Defendants again move to dismiss said claim, both for failure to state a claim and for failure to comply with the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").[2]

Section 14(a) makes it unlawful for any person to solicit, in violation of regulations promulgated by the SEC, "any proxy or consent or authorization in respect of any security . . . registered pursuant to section 78l." See 15 U.S.C. § 78n(a). SEC Rule 14a-9 provides: "No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state

---

[2] The PSLRA sets forth a heightened pleading standard for claims based on misleading statements and omissions; the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." See 15 U.S.C. § 78u-4(b)(1).

5

any material fact necessary in order to make the statements therein not false or misleading."  See 17 C.F.R. § 240.14a-9(a).  The United States Supreme Court has held that § 14(a) "was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought."  See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 444 (1976) (internal quotations and citations omitted).  Section 14(a) thus acts to "ensure disclosures by corporate management in order to enable the shareholders to make an informed choice."  See id. at 448.

Plaintiff alleges that the following representations in the proxy statements were materially misleading in violation of § 14(a) and Rule 14a-9:

- Market conditions at historically high levels have increased the attractiveness of the container fleet to prospective buyers.
- Selling now avoids having to liquidate assets under time constraints and uncertain market conditions in future years due to expiration of normal lives of the Textainer Partnerships.
- Selling now eliminates the risk and uncertainty of possible future downturns in market conditions for leased and used containers.

(See TAC ¶ 62; see also Textainer Defendants' Request for Judicial Notice ("RJN"), Ex. A (Proxy Statement) at 4.)  Plaintiff further alleges that the following statement in the Maccarone letter was materially false and misleading in violation of § 14(a) and Rule 14a-9: "The Asset Sale will provide you with the opportunity to liquidate your investment in the Partnership[s] for cash at a price and on terms that the general partners believe are fair to and in the best interests of the limited partners of the Partnership[s]."  (See SAC ¶ 64; see also RJN, Ex. A (Maccarone Letter) at 2.)

**1. Failure to Disclose Alleged Increase in Market Price**

The Court, in its prior orders, dismissed plaintiff's § 14(a) claim with leave to amend, to the extent such claim was based on the proxy statements' alleged failure to disclose that the price of shipping containers had increased by 18-20% after the date the Textainer Defendants and RFH agreed on a price for the Asset Sale.  (See Order Granting in Part and Denying in Part Textainer Defendants' Motion to Dismiss, filed December 12, 2005,

6

1 ("December 12 Order") at 8-12; Order Granting in Part and Denying in Part Textainer
2 Defendants' Motion to Dismiss, filed May 15, 2006, ("May 15 Order") at 6-9.)  In the
3 December 12 Order, the Court found that, in light of the proxy statements' disclosure that
4 there were significant increases in container prices in 2004, plaintiff's complaint failed to
5 articulate with the requisite particularity why the challenged representations in the proxy
6 statements were materially misleading as opposed to merely incomplete.  (See December
7 12 Order at 9 (citing Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir.
8 2002).)  In particular, the Court noted that plaintiff had failed to allege with the requisite
9 particularity (1) that market prices for containers were not readily available to the public; (2)
10 the source of plaintiff's information as to an 18-20% increase in the price of containers
11 during the relevant time period; and (3) that the alleged price increase applied to the
12 particular type of containers owned by the Textainer Partnerships.  (See December 12
13 Order at 10-11.)

14 In the May 15 Order, the Court found plaintiff had adequately amended his complaint
15 to allege the prices of shipping containers are not readily available to the public.  (See May
16 15 Order at 7.)  The Court found, however, that plaintiff's allegations with respect to  the
17 source of his information as to the asserted 18-20% price increase remained too
18 conclusory to satisfy the PSLRA's heightened pleading standard.[3]  (See id. at 7-8.)  In
19 particular, the Court found "[p]laintiff's conclusory allegations as to an unspecified analysis
20 performed by an unnamed or otherwise identified consultant, and which fail to include any
21 information about the consultant's qualifications, how the analysis was performed, or the
22 data upon which the consultant relied, are inadequate under the PLSRA's heightened
23 pleading standard."  (See id. at 8.)

24 Plaintiffs now have amended their complaint to allege the name of their consultant,
25 Manalytics International ("Manalytics"), and the consultant's qualifications.  (See TAC

---

[3] Because of plaintiff's failure to adequately plead the assertedly undisclosed 18-20% increase, the Court did not reach defendant's arguments as to the adequacy of plaintiff's amended allegations as to whether such price increase applies to the particular type of containers owned by the Textainer Partnerships.  (See id.)

7

¶¶ 38-40.) Defendants do not take issue with Manalytics' qualifications, but, rather, contend the complaint remains deficiently pleaded because plaintiff does not sufficiently allege the basis for Manalytics' opinions.

Where, as here, the allegations of misleading statements are based on information and belief, the PSLRA requires that the complaint "state with particularity all facts on which that belief is formed." See 15 U.S.C. § 78u-4(b)(1). The Ninth Circuit has held the above-referenced section of the PLSRA requires the plaintiff to "provide, in great detail, all the relevant facts forming the basis for [that] belief" and to "provide a list of all relevant circumstances in great detail." See In re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970, 984, 985 (9th Cir. 1999). Additionally, the PSLRA requires that the complaint reveal the "sources of [the plaintiff's] information," "corroborating details," and facts demonstrating the reliability of the plaintiff's assertions. See id. at 985.

Plaintiff alleges Manalytics' opinion that container prices increased by 18-20% from July 2004 to January 2005 is based on Manalytics' "internal data bases on the new and used container market," "discussions about market conditions with three other container leasing companies," review of "industry literature," and "discussions with manufacturers and used container dealers." (See TAC ¶ 41.) As defendants point out, however, the complaint is still inadequately pleaded because plaintiff fails to allege the factual content of any of the sources of information upon which Manalytics purportedly relied or to explain the analysis it assertedly performed. See, e.g., Silicon Graphics, 183 F.3d at 985 (rejecting, as inadequately pleaded, boilerplate assertion that allegations were supported by review of "SEC filings, securities analysts reports and advisories about the Company, press releases issued by the Company, media reports about the Company and discussions with consultants" because plaintiff did not "plead facts to corroborate her allegations" but, rather, "merely provide[d] a list of sources from which she allegedly obtained her information"); see also Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1233 (9th Cir. 2004) (finding reliance on opinion of expert adequately pleaded where complaint alleged expert's background, expert's calculations, content of discussion between expert and

employee of defendant, and content of corroborating documents).

Accordingly, the Court finds plaintiff has not adequately amended the complaint to plead with the requisite particularity the basis for his allegation that the price of containers increased 18-20% between July 2004 and January 2005, and, consequently, plaintiff's § 14(a) claim, to the extent such claim is based on a failure to disclose such price increase, is subject to dismissal.

### c. Application of Alleged Price Increase to Particular Type of Containers Owned by Textainer Partnerships.

Assuming, arguendo, that plaintiff has adequately pleaded the existence of an 18-20% increase in container prices during the relevant period, defendants contend plaintiff nonetheless has failed to allege with the requisite particularity that the prices for used containers and used containers encumbered by leases, such as those sold by the Textainer Defendants, rose by a similar amount during the same period.

Plaintiff has amended his complaint to allege that "[a]s new equipment prices rise, lease rates also increase, which affect the entire fleet," that "[t]he value of a fleet, in general, will increase when prices rise," and that "[a] strong historical correlation exists between the prices of new containers and the prices of used containers." (See TAC ¶ 37.) Plaintiff further alleges that the databases on which Manalytics relied in reaching its opinion with respect to the asserted price increase contained "data on container prices, new and used" and that Manalytics had "discussions with . . . used container dealers." (See TAC ¶ 41.) Additionally, plaintiff alleges "[t]he price increase affecting the container industry in general applied to containers owned by the Partnerships because they are fungible items." (See id. ¶ 46.)

As defendants point out, however, the complaint contains no summary or estimate of used container prices, no calculation comparing used container prices to new container prices, or any other corroborating information supporting Manalytics' claim of a strong correlation between new and used container prices. Accordingly, for those reasons and for the reasons set forth in the previous section, the Court finds plaintiff has not adequately

9

amended the complaint to plead with the requisite particularity the basis for his allegation that the price of the type of containers sold by the Textainer Defendants increased 18-20% between July 2004 and January 2005.  Consequently, plaintiff's § 14(a) claim, to the extent such claim is based on a failure to disclose such price increase, is subject to dismissal.

### d.    Conclusion

For the reasons set forth above, plaintiff's § 14(a) claim, to the extent such claim is based on a failure to disclose the alleged increase in the market price of containers between July 2004 and January 2005, will be DISMISSED.  Because plaintiff states Manalytics relied on data that provides support for said allegations, the Court will grant plaintiff another opportunity to amend.

### 2.    Failure to Disclose Sale Price Was Lower Due to Management Contract Requirement

In the December 12 Order, the Court dismissed plaintiff's § 14(a) claim with leave to amend to the extent such claim was based on the allegation that the Textainer Defendants failed to inform the limited partners, in the proxy statements, that the sale price was adversely affected by the management contract requirement.  (See December 12 Order at 12-14.)  The Court noted that the proxy statements disclosed not only that acceptance of a management contract with Textainer Equipment was one of the conditions to bidding as well as a condition to the Asset Sale Agreement, but also disclosed the principal terms of that management contract.  (See December 12 Order at 12-13.)  The Court found plaintiff had not adequately alleged the reason(s) why such disclosure was materially misleading, as, based on the information disclosed in the proxy statement, any Textainer limited partner could infer that the management contract requirement might have affected the ultimate bid price.  (See id. at 13.)

In the May 15 Order, the Court again dismissed said claim.  Although plaintiff had amended the complaint to allege a failure by the Textainer Defendants to disclose in the proxy statements that they excluded from the bidding process all container leasing companies, which, plaintiff further alleged, were likely to pay the highest price due to their

1 ability to take advantage of economies of scale, the Court found the Second Amended
2 Complaint contained no allegation suggesting that any container leasing company would
3 have bid more than RFH, such as an allegation that a comparable asset sale in which
4 container leasing companies were permitted to bid generated a higher price than RFH's bid
5 in the instant case.  (See May 15 Order at 10.)
6 　　　　In the Third Amended Complaint, plaintiff has added additional allegations as to the
7 asserted differences between "strategic buyers," such as container leasing companies, and
8 "financial buyers," which plaintiff defines as investors that do not operate in the container
9 leasing industry.  (See TAC ¶ 79.)  In particular, plaintiff alleges that "[g]enerally, a strategic
10 buyer would place a higher value on the entity that is being sold because such purchaser
11 would not typically require any new infrastructure investment, but would create greater
12 efficiencies as they could use the same marketing staff, IT systems, administration, after-
13 market program, etc. to operate the newly-purchased fleet."  (See TAC ¶ 80.)  These
14 allegations are not materially different from the allegations contained in the Second
15 Amended Complaint.  (See SAC ¶ 63.)  As defendants point out, plaintiff still fails to allege
16 any facts suggesting that any container leasing company would have bid more than RFH's
17 bid in the instant asset sale.  There are no facts alleged that suggest, for example, that
18 RFH's bid was below market price at the time it was made, or that a comparable asset sale
19 in which container leasing companies were permitted to bid generated a higher price than
20 RFH's bid.
21 　　　　Accordingly, plaintiff's § 14(a) claim, to the extent such claim is based on an alleged
22 failure to inform the limited partners, in the proxy statements, that the sale price was lower
23 than it otherwise would have been as a result of the management contract requirement, will
24 be DISMISSED with leave to amend.[4]
25

---

26
27
28
[4] In light of the Court's finding that plaintiff has not adequately pleaded the proxy statements were materially misleading, the Court does not reach defendants' additional argument that plaintiff has not pleaded with the requisite particularity "that Textainer was negligent in not disclosing either the alleged increase in container prices or the supposed defects in its bidding process." (See Motion at 11.)

11

### 3. Statement in Maccarone Letter as to Fairness of Asset Sale

In the December 12 Order, the Court dismissed, with leave to amend, plaintiff's § 14(a) claim, to the extent such claim is based on allegations that the Maccarone Letter was materially false or misleading because the Asset Sale was priced below prevailing market value and therefore was not in the best interests of the limited partners. (See December 12 Order at 14-15.) The Court noted that such statement is an opinion, and that a defendant may be liable for statements of opinion only if (1) the speaker did not actually hold the opinion and (2) the opinion was objectively false or misleading. (See id. at 15 (citations omitted)). The Court dismissed the claim because plaintiff failed to allege that the Textainer Defendants did not actually hold the opinion stated in the Maccarone Letter, and because plaintiff had failed to adequately allege objective falsity. (See id. at 15.)

In the May 15 Order, the Court again dismissed said claim because plaintiff had not alleged with the requisite particularity that there actually were significant increases in the price of the relevant containers in the second half of 2004, or that the management contract requirement or the decision to exclude container leasing companies from the bidding adversely affected the price obtained in the Asset Sale. (See May 15 Order at 12.) Because, as explained above, the pleading is still deficient in that respect, plaintiff's § 14(a) claim, to the extent such claim is based on statements of opinion in the Maccarone letter, will be DISMISSED with leave to amend.

### B. Section 20 Claim

Plaintiff alleges the Textainer Defendants are additionally liable for violating § 20(a) of the Exchange Act. (See SAC ¶¶ 111-113.) Section 20(a) provides that "every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." See 15 U.S.C. § 78t(a). "In order to prove a prima facie case under § 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws . . . and (2) that the defendant exercised actual power or control over the primary violator." Howard v.

Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Because, as discussed above, plaintiff has failed to allege "an actionable independent underlying violation of the [Exchange] Act," plaintiff has not stated a claim for violation of § 20(a).  See In re VeriFone Securities Litigation, 11 F.3d 865, 872 (9th Cir. 1993).

Accordingly, plaintiff's § 20(a) claim will be DISMISSED with leave to amend.

**C.  State Law Claims**

The Textainer Defendants ask the Court to decline to exercise supplemental jurisdiction over the state law claims if the Court dismisses the federal claims.  Although the Court again will dismiss the federal claims, it again will do so with leave to amend.  Because plaintiff may be able to cure the deficiencies identified in the federal claims, the Court finds it premature to address at this time the discretionary exercise of supplemental jurisdiction.

**CONCLUSION**

For the reasons set forth above, the Textainer Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1.  With respect to plaintiff's § 14(a) claim, the motion is GRANTED and such claim is DISMISSED with leave to amend.

2.  With respect to plaintiff's § 20(a) claim, the motion is GRANTED and such claim is DISMISSED with leave to amend.

3.  With respect to plaintiff's state law claims, the motion to dismiss is DENIED without prejudice.

3.  Plaintiff may file an amended complaint no later than 20 days from the date of this order.

This order terminates Docket No. 179.

**IT IS SO ORDERED.**

Dated: August 10, 2006

_____
MAXINE M. CHESNEY
United States District Judge